TY MULLIN
2464 South Bascom Avenue, No.5
Campbell, CA 95008
Tel: (669) 324-3573
TyMullin0708@Gmail.com
Ty.Mullin.InPropria@Outlook.com

*Filed In Propria Persona*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TYGHE JAMES MULLIN,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, a municipal corporation; JENNIFER MAGUIRE, sued in her individual and official capacity as City Manager for the City of San Jose; PAUL JOSEPH, sued in his individual and official capacity as Interim Chief of Police for the City of San Jose; JAMES P. HUSSEY, sued in his individual and official capacity as a Sergeant for the San Jose Police Department; MATTHEW J. DELORENZO, sued in his individual and official capacity as a San Jose Police Officer<br><br>        Defendants. | Case No. 3:23-cv-04399-AMO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRESERVATION, ORDER OF FORENSIC AUDIT, AND SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER; AND EXHIBITS**<br><br>Judge:  Hon, Aracelli Martinez-Olguin<br>Dept:   Courtroom 10 - 19th Floor<br>Date:   [To Be Set]<br>Time:   TBD |

TO THE HONORABLE ARACELI MARTINEZ-OLGUIN AND TO ALL PARTIES

AND THEIR ATTORNEY'S OF RECORD:

PLEASE TAKE NOTICE that Plaintiff TYGHE JAMES MULLIN, appearing *in propria persona*, hereby respectfully moves this Court for an Order:

1.  **Preserving all electronically stored information** (ESI), audit logs, and metadata related to Plaintiff's California Public Records Act requests ("CPRA") and underlying San Jose Police Department ("SJPD") reports;

2. **Appointing a neutral forensic examiner** pursuant to Federal Rules of Civil Procedure Rule 53 to audit SJPD's records systems and determine the scope of post-release alterations;

3. **Imposing sanctions** under Fed. R. Civ. P. 37(e) for bad faith spoliation of evidence; and

4. **Any additional relief** this Court deems just and proper.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed exhibits (Exhibits 1-4), and the entire record in this matter. This Honorable Court is now presented with a matter that transcends Plaintiffs claims alone and calls into question the integrity of judicial proceedings withing its jurisdiction. Plaintiff TYGHE JAMES MULLIN respectfully submits newly uncovered evidence showing that Defendants - while actively litigating this case - have engaged in the systematic alteration of official police records. These acts directly compromise evidence material to Plaintiffs claims of excessive force and constitutional deprivation.

**Dated:** July 21, 2025

Respectfully submitted,



Tyghe James Mullin
2464 South Bascom Avenue, No.5 | Campbell, CA 95008
Tel: (669) 324-3573 | TyMullin0708@Gmail.com
Ty.Mullin.InPropria@Outlook.com
/s/ Tyghe James Mullin

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

Plaintiff presents this Motion not as mere speculation but supported by documented proof of systemic post-release tampering, metadata manipulation, and content fabrication in records produced by the San Jose Police Department (SJPD).

Recent CPRA responses contain glaring discrepancies between the original police reports smuggled from custody and filed with the federal court in 2024 (See Exhibit 1A) and the fabricated versions produced post-litigation in 2025 (See Exhibit 1B). These discrepancies, detailed below, demonstrate deliberate efforts to downgrade charges, erase critical use-of-force categorizations, and substitute involved officers—materially affecting the litigation's integrity.

## II. STATEMENT OF FACTS

### A. Original Reports vs. Fabricated Versions

In 2024, Plaintiff filed with this Court an unaltered Versadex report from SJPD (See Exhibit 1A). That report listed charges limited to misdemeanors and preserved Lieutenant McKim's Category 3 use-of-force classification. In 2025, updated versions retrieved from GovQA and Versadex reveal altered charges including felony designations never pursued by prosecutors,

omissions of Category 3 classifications, and metadata showing postdating as late as July 2025 (See Exhibit 1B).

*(See Exhibit 1B at PDF p. 12, metadata showing "Modified: July 11, 2025"; cf. Exhibit 1A showing original unaltered text.)*

## B. Metadata & Email Evidence of Post-Release Editing

On July 10, 2025, Plaintiff corresponded with Evita Martin, Division Manager of SJPD's Operations Support Services (OSSD), highlighting metadata inconsistencies in denial letters produced under her oversight (See Exhibit 2). Metadata confirmed modifications after official release dates, authorship inconsistencies (Westmoreland vs. Martin), and use of non-native tools like **PDFium** for document editing.

*(See Exhibit 2 at PDF p. 4 showing creation date "2024-12-29" but modification date "2025-07-11"; cf. GovQA entry marked "Full Release" as of July 9, 2025, without actual document transmission.)*

## C. June 25, 2025 Filing Corroborates CAD Manipulations

Plaintiff's prior federal filing on June 25, 2025, documented manipulation of CAD records including conflicting timestamps, officer assignments, and use-of-force classifications (See Exhibit 3). These inconsistencies mirror the discrepancies now observed in fabricated Versadex reports.

*(See Exhibit 3, Mullin v. Santa Clara County, et al., Case No. 23CV425372, highlighting CAD logs where Topiai Fanua's involvement was omitted despite multiple GBI incidents documented in separate CPRA responses.)*

---

**D. Officer Substitution & History Suppression**

The fabricated reports introduce Officer Ian R. Odoley—a known high-use-of-force officer—as a complainant, despite his absence in original reports (See Exhibit 4A). Meanwhile, officers with histories of excessive force such as Topiai Fanua remain inexplicably absent. This selective officer inclusion serves to sanitize SJPD's exposure to Monell liability.

*(Exhibit 4B, metadata showing addition of Officer Odoley post-2024; cf. Exhibit 1A where Odoley is absent entirely.)*

---

# III. LEGAL ARGUMENT

**A. Preservation & Forensic Audit Are Warranted Under Rule 37(e)**

Federal courts impose preservation duties where ESI is material to litigation.( See ***Zubulake v. UBS Warburg LLC***, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy."). SJPD's continued editing post-release violates this duty. A forensic audit is the only remedy ensuring that the Court and Plaintiff are not litigating against an altered record.( *See* ***Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*** 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010).*

**B. Bad Faith Spoliation Merits Sanctions**

Under ***West v. Goodyear Tire & Rubber Co.***, *167 F.3d 776 (2d Cir. 1999*), courts sanction parties for bad faith destruction or alteration of evidence. Here, metadata confirms SJPD engaged in post-release template editing—an intentional act warranting monetary and procedural sanctions.

# IV. RELIEF REQUESTED

Plaintiff respectfully requests this Court order:

i.    **Preservation** of all electronic records and metadata;

ii.   **Appointment** of a neutral forensic examiner; and

iii.  **Sanctions** against Defendants for bad faith spoliation of evidence.

**Dated:** July 21, 2025

Respectfully Submitted,



Tyghe James Mullin
2464 South Bascom Avenue, No.5 | Campbell, CA 95008
Tel: (669) 324-3573 | TyMullin0708@Gmail.com
Ty.Mullin.InPropria@Outlook.com
/s/ Tyghe James Mullin

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

## Evidence of Post-Release Document Manipulation

## (SJPD Versadex Report - Case No. 22-121-0580)

### Prepared For:

Public Records Act Addendum Response

*Mullin v. Santa Clara County, et al.*

### Date: July 21, 2025

# Original Filing Date Confirmation - PACER Docket
Figure 1: PACER docket showing entry filing date of Versadex Report
*[Establishes that the report existed in this form as of  05/14/2024]*

CM/ECF    Civil ▾   Criminal ▾   Query   Reports ▾   Utilities ▾   Search   Help   Log Out

CLOSED,E-ProSe,ProS

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:23-cv-06110-AMO**

Mullin v. San Jose Police Department
Assigned to: Judge Araceli Martinez-Olguin
Referred to: PSLC GRC
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 11/27/2023
Date Terminated: 06/04/2025
Jury Demand: Plaintiff
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Tyghe James Mullin**

represented by **Tyghe James Mullin**
23008154
2464 South Bascom Avenue
Apt. 5
95008, Ste Apt. 5
Campbell, CA 95008
669-324-3573

| | | |
|---|---|---|
| 04/19/2024 | 13 | ORDER GRANTING *IN FORMA PAUPERIS STATUS* ; AND DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL. Signed by Judge Araceli Martinez-Olguin on 4/19/2024. (ads, COURT STAFF) (Filed on 4/19/2024)<br><br>*Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)*<br><br>(Entered: 04/19/2024) |
| 05/14/2024 | 14 | Received Document by Tyghe James Mullin. (Attachments: # 1 Envelope)(mbc, COURT STAFF) (Filed on 5/14/2024) (Entered: 05/17/2024) |
| 05/15/2024 | 15 | Prisoner Statement of Account. (Attachments: # 1 Envelope)(mbc, COURT STAFF) (Filed on 5/15/2024) (Entered: 05/17/2024) |
| 05/15/2024 | 16 | Prison Trust Fund Account Statement by Tyghe James Mullin. (Attachments: # 1 Envelope)(slh, COURT STAFF) (Filed on 5/15/2024) (Entered: 05/28/2024) |
| 06/07/2024 | 17 | Received Document: Inmate Appeal Disposition by Tyghe James Mullin. (Attachments: # 1 Envelope)(slh, COURT STAFF) (Filed on 6/7/2024) (Entered: 06/11/2024) |
| 07/08/2024 | 19 | AMENDED COMPLAINT against San Jose Police Department. Filed by Tyghe James Mullin. (Attachments: # 1 Envelope)(slh, COURT STAFF) (Filed on 7/8/2024) (Entered: 07/10/2024) |
| 07/09/2024 | 18 | ORDER OF DISMISSAL WITH LEAVE TO AMEND. Signed by Judge Araceli Martinez-Olguin on 7/9/2024. (ads, COURT STAFF) (Filed on 7/9/2024)<br><br>*Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)*<br><br>(Entered: 07/09/2024) |
| 07/22/2024 | 20 | SECOND AMENDED COMPLAINT against Matthew J. DeLorenzo, James Hussey, James Adger. Filed by Tyghe James Mullin. (Attachments: # 1 Amended Complaint, # 2 Envelope, # 3 Envelope)(slh, COURT STAFF) (Filed on 7/22/2024) (Entered: 07/24/2024) |
| 07/24/2024 | 21 | DEMAND for Trial Jury re Second Amended Complaint by Tyghe James Mullin. (Attachments: # 1 Envelope)(slh, COURT STAFF) (Filed on 7/24/2024) (Entered: 07/24/2024) |
| 05/13/2025 | 22 | NOTICE of Voluntary Dismissal *Notice of Voluntary Dismissal With Prejudice* by Tyghe James Mullin (Mullin, Tyghe) (Filed on 5/13/2025) (Entered: 05/13/2025) |

**PACER Service Center**

**Transaction Receipt**



# SAN JOSE POLICE DEPT
## DISTRICT ATTORNEY HARDCOPY
### DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT
SUBMITTED TO DA FOR REVIEW

**273.5A-2 273.5(A) PC DV SBI OR WEAPON**

## Narrative Text

3-23◆CV-06110-AMO **RECEIVED**

**Type** SUPPLEMENTAL
**Subject** COMMANDER USE OF FORCE SUPP
**Author** 3893 - MCKIM

**MAY 14 2024**

**Related Date** May-02-2022 1:46

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

On 5/1/2022, at approximately 1732 hours, I was assigned as the Southern Division Watch Commander. My call sign was 5052. I was notified of a suspicious circumstances call at ████ ████ in San Jose. I monitored the radio traffic while I was on another event and attached to the event at 1829 hours. As I was driving to the event, I noted that a perimeter had been set up and that the San Jose Police K9 had been deployed.

I arrived at 1846 hours and contacted Sergeant Hernandez #3746 and Sergeant Hussey #3575, who provided me with an update:

The initial report was that a known male in his early 40s (suspect) was attempting to force entry into a residence. The suspect fled the area on foot. Officers investigated further and discovered the suspect had pushed and struck his ex-girlfriend and threatened to kill her while brandishing a handgun (core transaction).

Officers established a perimeter and called for K-9 units and Air 3. Both arrived shortly thereafter and assisted with the location and apprehension of the suspect. K9 Officer Delorenzo's #3796 K9 had bitten the suspect in the leg and the hand. Sergeant Hussey #3575 and Sergeant Hernandez #3746 turned the suspect over and handcuffed him.

The suspect was provided medical attention by EMS at the scene. He was then transported via ambulance to Valley Medical Center for further medical attention. The suspect sustained a dog bite to his leg and hand, and some lacerations.

Sergeant Hernandez #3746 injured his wrist while taking the suspect into custody by declined medical.

Upon his release from the hospital, the suspect was booked into Santa Clara County Jail for Domestic Violence, Criminal Threats, Brandishing a Weapon and Resisting Arrest.

I conducted a Category III use of force investigation per Duty Manual Section L 2605.5.

Sergeant Hussey #3575 completed the use of force investigation. I reviewed the body worn camera video from Sergeant Hussey #3575 and Sergeant Hernandez #3746. I determined this was a Category 3 Use of Force based on the bite by the San Jose Police K9.

I directed Sergeant Hussey #3575 to ensure the following tasks were completed:
* Canvass for witnesses and video
* Photos of the suspect, officers and scene taken
* Authored a supplemental report
* Evidence collected from the scene and suspect
* Use of force templates completed
* Review officers' BWC footage
* Obtain a statement of the suspect
* Medical aid provided to the suspect, transported to VMC for medical treatment
* The involved officers' reports were reviewed and signed off
* Completion of a Daily Log entry

Sergeant Hussey #3575 conducted the use of force investigation. See officers' and Sergeant Hussey's #3575 and reports for their actions and details.

The image shows a redacted header with overlapping text typical of court filing stamps.



**SAN JOSE POLICE DEPT**
**DISTRICT ATTORNEY HARDCOPY**
DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT
SUBMITTED TO DA FOR REVIEW

273.5A-2 273.5(A) PC DV SBI OR WEAPON

## Narrative Text

**Type** USE OF FORCE - SUPERVISOR
**Author** 3574 - HUSSEY ▮▮▮▮▮
**Related Date** May-02-2022 1:25

On Sunday May 1, 2022, I was working as the district X-ray, Sergeant (6X10). District X-ray is located in the Southern Division of San Jose. At approximately 1708 hrs. the resident at ▮▮▮▮▮▮▮▮▮▮▮▮ reported an unknown male just jumped the fence into his backyard. The matched the description of a male involved in a Domestic Violence incident, where the suspect struck his ex-girlfriend and threatened to kill her while pointing a gun at her. I responded to the area to assist with setting a perimeter.

Officers met with the victim. She confirmed the suspect (identified as Mullen, Tyghe) was her ex-boyfriend whom she has two children in common with. She stated the Mullen pushed her and punched her in the face causing an injury. Mullen threatened to kill her while pointing a pistol at her.

Several reporting parties called 911-dispatch and reported a male jumping fences in and around the area. At 1810 hrs. a reporting party called 911-dispach and reported the suspect was seen in the backyard of ▮▮▮▮▮▮▮▮▮▮▮. The reporting party stated the male's face was bloody. Due to heightened threat level of the suspect being armed with a gun and the suspect's active evasion of the police, San Jose K-9 officers responded to assist with searching for the suspect. A perimeter was set around 6474 Camino Verde and ▮▮▮▮ ▮▮▮▮ Court. Air-3 made several K-9 announcements over the helicopters PA system. The announcements could be heard loud and clear from the street around the residence. Officers cleared the backyard of ▮▮▮ ▮▮▮▮ ▮▮▮▮ Officer Gonzalez #4580 and K-9 Officer Delorenzo #3796 were staged preparing to enter and clear the backyard of ▮▮▮▮▮▮▮▮▮▮; Air-3 advised the male was running towards officers in the backyard. Officer Gonzalez gave several announcements to the male to stop. The male disobeyed the Officers orders and continued running at the Officers, the K-9 was used to apprehend the suspect.

I assisted in taking the suspect into custody. I took control of Mullen's left wrist and upper arm, I helped roll the Mullen onto his stomach so we could place handcuffs on him. Once Mullen his stomach, I pulled his arm behind his back and Sergeant Hernandez #3746 placed him into handcuffs. Officers escorted Mullen out to be treated by fire and Paramedics who were on-scene.

While on-scene I insured the following investigative steps were taken:

A canvass for witnesses and surveillance cameras were conducted.
The scene was photographed.
The suspect was transported to Valley Medical Center (VMC) for medical attention.
The victim's injuries were photographed.
I reviewed and signed off reports.

I responded to VMC to interview Mullen. While waiting to interview Mullen the attending nurse asked Mullen how he had gotten his injuries. Mullen stated that it was his fault and he had been bitten by a Police dog. The nurse asked what had happened to his left hand. Mullen stated he had put his hand in the dog's mouth to try and pull the dog off of his leg. I activated my BWC and read Mullen his Miranda rights per my Department issued Miranda card. Mullen and answered "yes" to all the questions and stated he would talk to me. Below is a synopsis of Mullen's statement to obtain a full and accurate statement refer to my BWC.

Statement of Mullen:
Mullen stated that he knew the police were outside the yard he was in because he heard Air-3 overhead. He stated he heard the announcements Air-3 gave but he did not come out because he



### SAN JOSE POLICE DEPT
#### DISTRICT ATTORNEY HARDCOPY
##### DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

**GO# SJ 2022-221210580 COMPLAINT**          **273.5A-2 273.5(A) PC DV SBI OR WEAPON**
**SUBMITTED TO DA FOR REVIEW**

did not know what to do. When I asked him about his injuries he stated "lawyer". I ended the interview.

Mullen was treated for the following injuries:
Dog bite to his left calf.
Dog bite to left arm and fingers.
Abrasions to chest and back.

Mullen was transported and booked into jail on the following charges 273.5 PC, 422 PC, 417 PC, 649.9 PC, 148 PC.



## SAN JOSE POLICE DEPT
### DISTRICT ATTORNEY HARDCOPY
#### DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT      273.5A-2 273.5(A) PC DV SBI OR WEAPON
SUBMITTED TO DA FOR REVIEW

Enter the suspect's name below IF it is not among the Entities listed above
Last Name:      [MULLIN                                                      ]

Given Name(s):  [TYGHE          ] [                    ] [

Age in years:   [31 TO 35          ]
Gender:         [MALE          ]
Race:           [WHITE                    ]

Primary language spoken by suspect: [ENGLISH                 ] [    ]Unknown

Did the suspect assault you?        [NO   ]

Suspect arrested and/or in custody? [In custody            ]


Did you perceive the suspect to be armed?        [YES  ]
If YES, indicate weapon type (check all that apply):
[ X ]Firearm                                [   ]Other dangerous weapon
[   ]Knife, blade, or stabbing instrument   [   ]Unknown


Did you confirm the suspect to be armed?         [NO   ]
If YES, confirm weapon type (check all that apply):
[   ]Firearm
[   ]Firearm replica
    Firearm types (check all that apply):
    [   ]Handgun      [   ]Rifle
    [   ]Shotgun      [   ]Other firearm
[   ]Knife, blade, or stabbing instrument
[   ]Other dangerous weapon


Did suspect resist? [YES  ] If YES, choose highest level of resistance:
                    [ASSAULTIVE                 ]

Did the suspect attempt to disarm you?  [NO   ]

Did you use force on this suspect?      [YES  ]

Type of force you used on the suspect (check all that apply):
[   ]Carotid restraint control hold          [   ]Threat of firearm
[   ]Other control hold/takedown             [   ]Electronic control device

[   ]Other physical contact (fists, feet, etc.) [   ]Discharge of firearm (miss)

[   ]Blunt/impact weapon                     [   ]Discharge of firearm (hit)



## SAN JOSE POLICE DEPT
### DISTRICT ATTORNEY HARDCOPY
#### DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT          273.5A-2 273.5(A) PC DV SBI OR WEAPON
SUBMITTED TO DA FOR REVIEW

## Narrative Text

Type SYNOPSIS
Subject USE OF FORCE REPORTING
Author 3796 - DELORENZO
Related Date May-02-2022 1:18

```
General Offense Report#  [221210580]   SJPD Primary Agency? [YES  ]
Did you include the "USEFORCE" offense code on the GO?
[NO, THIS IS A SUPPLEMENTAL REPORT                                     ]


Were multiple police agencies involved in the incident?    [NO   ]
Did you discharge a firearm?                               [NO   ]
Did you use force on a suspect?                            [YES  ]
Did this cause serious injury or death to a suspect?       [NO   ]
Did the suspect(s) assault you?                            [NO   ]
Did this cause serious injury to you?                      [NO   ]
Did this incident cause death to an officer?               [NO   ]


Check all that apply to this Use of Force incident:
[ X ]Multiple incident locations
[   ]Incident occurred on a K-12 campus
[ X ]An arrest was made
[ X ]Incident resulted in a crime report
[ X ]Body Worn Camera RECORDING during incident


Initial contact reason (select only one):
[CRIME IN PROGRESS OR INVESTIGATING SUSP PERSONS OR CIRCUMSTANCES    ]


Number of suspects involved   [ 1]
(TO YOUR KNOWLEDGE, the total number of suspects who had force used on
them and/or who assaulted an officer)

Number of officers involved   [1  ]
(TO YOUR KNOWLEDGE, among officers present on the scene, the number who used
force on a suspect and/or were assaulted by a suspect)


SUSPECT INFORMATION
Suspect Name:            [   ]Unknown, suspect escaped
(Use drop-down menu to select from the list of Entities)

[                                                                     ]
```



# SAN JOSE POLICE DEPT
## DISTRICT ATTORNEY HARDCOPY
### DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT       273.5A-2 273.5(A) PC DV SBI OR WEAPON
SUBMITTED TO DA FOR REVIEW

[MEDICAL ASSISTANCE TREATED AT FACILITY AND RELEASED       ]

Was the suspect's injury caused by a pre-existing condition? [NO    ]

OFFICER INFORMATION
Officer Name:                                           Badge Number:
[DELORENZO, MATTHEW J                      ]  [3796   ]
Age in years:    [46 TO 50          ]
Gender:          [Male        ]
Race:            [WHITE                    ]
On duty:         [YES    ]
Officer type:    [SWORN               ]
Patrol shift:    [SECOND WATCH       ]
Officer dress:   [TACTICAL    ]
Years of experience:     [21 ]
Assignment (select only one): [SPECIAL OPERATIONS UNIT       ]

Did you use force against a suspect (or multiple suspects)?  [Yes ]
If YES, reason for use of force (check all that apply):
[ X ]To effect arrest
[ X ]To prevent escape
[ X ]To overcome resistance

Were you assaulted by suspect(s)? [NO ]

Type of force the suspect used on you (check all that apply):
[  ]Suspect physical contact            [  ]Impact Projectile
[  ]Suspect vehicle contact            [  ]Threat of firearm

[  ]Blunt/impact weapon               [  ]Discharge of firearm (miss)
[  ]Chemical Spray (e.g. OC/CS)       [  ]Discharge of firearm (hit)
[  ]Electronic control device         [  ]Other dangerous weapon
[  ]Knife, blade, or stabbing instrument  [  ]Animal

Location(s) on you where suspect(s) used force (check all that apply):
[ X ]Not applicable                    [  ]Head
[  ]Neck/throat                     [  ]Front upper torso/chest
[  ]Rear upper torso/back            [  ]Front lower torso/abdomen

[  ]Rear lower torso/back            [  ]Front below waist/groin area
[  ]Rear below waist/buttocks       [  ]Arms/hands
[  ]Front legs/feet                 [  ]Rear legs



Were you injured (even if minor)?    [NO   ]

If YES, indicate your injury level (select only one):
[                                                      ]
*Serious Bodily Injury involves a substantial risk of death, unconsciousness,
protracted and obvious disfigurement, or protracted loss or impairment of the
function of a bodily member or organ: wound requiring extensive suturing,
bone fracture, concussion.


What type of injury did you sustain?   (check all that apply):
[   ]Unconsciousness                [   ]Contusion
[   ]Concussion                     [   ]Bone Fracture
[   ]Internal injury                [   ]Abrasion/Laceration
[   ]Obvious disfigurement          [   ]Gunshot wound
[   ]Stabbing wound                 [   ]Complaint of pain

Medical aid you received - choose highest applicable:
[NO MEDICAL ASSISTANCE OR REFUSED ASSISTANCE                               ]

Was your injury caused by a pre-existing condition? [NO   ]


Primary officer activity immediately prior to force response (select only one):
[ATTEMPTING TO TAKE CUSTODY                                               ]

Did the use of force result from taking the suspect into custody? [YES   ]



**SAN JOSE POLICE DEPT**
DISTRICT ATTORNEY HARDCOPY
DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT
SUBMITTED TO DA FOR REVIEW

273.5A-2 273.5(A) PC DV SBI OR WEAPON

[    ]Chemical spray (e.g. OC/CS)
[    ]Impact projectile
[    ]Knife, blade, or stabbing instrument

[    ]Officer vehicle contact
[ X ]K-9 contact
[    ]Other dangerous weapon

Check all items that you deployed/discharged in this use of force incident:
[    ]TASER drive stun
[    ]TASER probes deployed
[    ]TASER probes deployed (miss)

Location on suspect where you used force (check all that apply):
[    ]Not applicable
[    ]Neck/throat
[    ]Rear upper torso/back
[    ]Rear lower torso/back
[    ]Rear below waist/buttocks
[    ]Front legs/feet

[    ]Head
[    ]Front upper torso/chest
[    ]Front lower torso/abdomen
[    ]Front below waist/groin area
[ X ]Arms/hands
[ X ]Rear legs

Suspect's erratic behavior as you perceived it at the time of the incident (check all that apply):
[ X ]None
[    ]Signs of mental disability

[    ]Signs of physical disability

[    ]Signs of alcohol impairment
[    ]Signs of drug impairment

[    ]Signs of developmental disability

Was suspect injured (even if minor)?     [YES        ]
If YES, indicate suspect's injury level (select only one):
[INJURY                          ]
*SERIOUS BODILY INJURY involves a substantial risk of death, unconsciousness, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ: wound requiring extensive suturing, bone fracture, concussion.

Suspect injury type (check all that apply):
[    ]Unconsciousness
[    ]Concussion
[    ]Internal injury
[    ]Obvious disfigurement
[    ]Stabbing wound

[    ]Contusion
[    ]Bone fracture
[ X ]Abrasion/laceration
[    ]Gunshot wound
[ X ]Complaint of pain

Medical aid the suspect received - choose highest applicable:

2022-221210580 Page _____ of _____

Ty    M

701 S. Abel St.

Milpitas, CA 95035

USA ★ FOREVER

RECEIVED

MAY 14 2024

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

County Jail
Generated Mail

U.S. District Court

450 Golden Gate Ave.

P.O. Box 36060

SF, CA 94102

11 MAY 2024 PM 4

SAN JOSE CA 950

94102836489 C0C4

- 3:23 - cv - 06110 - AMO -



3:23 - CV - 06110 - AMO

© USPS 2019

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST-CONSUMER CONTENT

FSC
MIX
Envelope
FSC® C137131



**SAN JOSE POLICE DEPT**
**DISTRICT ATTORNEY HARDCOPY**
DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT                    273.5A-2 273.5(A) PC DV SBI OR WEAPON
SUBMITTED TO DA FOR REVIEW

## Narrative Text

　　　　Type SUPPLEMENTAL
　　　Subject COMMANDER USE OF FORCE SUPP
　　　 Author 3893 - MCKIM ●
　　Related Date May-02-2022 1:46

On 5/1/2022, at approximately 1732 hours, I was assigned as the Southern Division Watch
Commander. My call sign was 5052. I was notified of a suspicious circumstances call at ●
● in San Jose. I monitored the radio traffic while I was on another event and
attached to the event at 1829 hours. As I was driving to the event, I noted that a perimeter
had been set up and that the San Jose Police K9 had been deployed.

I arrived at 1846 hours and contacted Sergeant Hernandez #3746 and Sergeant Hussey #3575,
who provided me with an update:

The initial report was that a known male in his early 40s (suspect) was attempting to force
entry into a residence. The suspect fled the area on foot. Officers investigated further and
discovered the suspect had pushed and struck his ex-girlfriend and threatened to kill her
while brandishing a handgun (core transaction).

Officers established a perimeter and called for K-9 units and Air 3. Both arrived shortly
thereafter and assisted with the location and apprehension of the suspect. K9 Officer
Delorenzo's #3796 K9 had bitten the suspect in the leg and the hand. Sergeant Hussey #3575
and Sergeant Hernandez #3746 turned the suspect over and handcuffed him.

The suspect was provided medical attention by EMS at the scene. He was then transported via
ambulance to Valley Medical Center for further medical attention. The suspect sustained a
dog bite to his leg and hand, and some lacerations.

Sergeant Hernandez #3746 injured his wrist while taking the suspect into custody by declined
medical.

Upon his release from the hospital, the suspect was booked into Santa Clara County Jail for
Domestic Violence, Criminal Threats, Brandishing a Weapon and Resisting Arrest.

I conducted a Category III use of force investigation per Duty Manual Section L 2605.5.

Sergeant Hussey #3575 completed the use of force investigation. I reviewed the body worn
camera video from Sergeant Hussey #3575 and Sergeant Hernandez #3746. I determined this was
a Category 3 Use of Force based on the bite by the San Jose Police K9.

I directed Sergeant Hussey #3575 to ensure the following tasks were completed:
* Canvass for witnesses and video
* Photos of the suspect, officers and scene taken
* Authored a supplemental report
* Evidence collected from the scene and suspect
* Use of force templates completed
* Review officers' BWC footage
* Obtain a statement of the suspect
* Medical aid provided to the suspect, transported to VMC for medical treatment
* The involved officers' reports were reviewed and signed off
* Completion of a Daily Log entry

Sergeant Hussey #3575 conducted the use of force investigation. See officers' and Sergeant
Hussey's #3575 and reports for their actions and details.

2022-221210580 Page _____ of _____



**SAN JOSE POLICE DEPT**
**DISTRICT ATTORNEY HARDCOPY**
DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT          273.5A-2 273.5(A) PC DV SBI OR WEAPON
SUBMITTED TO DA FOR REVIEW

## Narrative Text

      **Type** USE OF FORCE - SUPERVISOR
      **Subject** USE OF FORCE REPORT SUPERVISOR
      **Author** 3574 - HUSSEY███████
      **Related Date** May-02-2022 1:26

Related General Offense number  [221210580 ]


Did a supervisor respond to the incident?  [YES ]
If YES, indicate name and badge of responding supervisor:
Name                                    Badge No.
[HUSSEY,███████                      ]    [3574    ]


On a category scale of 1 to 4 (1 being the lowest), what was the highest
category of force applied by the officer(s) during this incident?   [3   ]
(refer to Duty Manual section L2605.5 for reference to category levels)


Did a command officer respond to this event?[YES                             ]
If YES, indicate name and badge of command officer:
Name                                    Badge
[MCKIM,██████ █                      ]    [3893    ]


Was the 'USEFORCE' offense code added to the GO? [YES ]


To the best of your knowledge, what is the total number of suspects
that had force used on them in relation to this event? [1  ]


If the answer to any of the questions below require further detail,
please expound in a SUPPLEMENTAL report.

Did a supervisor direct use of force?        [NO  ]

Other video evidence obtained?               [NO  ]

Canvass completed?                           [YES ]

Scene photos?                                [YES ]

Recorded statement obtained from suspect? [YES ]



# SAN JOSE POLICE DEPT
## DISTRICT ATTORNEY HARDCOPY
### DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

**GO# SJ 2022-221210580 COMPLAINT**　　　　　　**273.5A-2 273.5(A) PC DV SBI OR WEAPON**
**SUBMITTED TO DA FOR REVIEW**

Suspect photographed?                    [YES ]

Chemical sample obtained from suspect?   [NO  ]

Suspect weapon photographed?             [NO  ]

Suspect weapon recovered?                [NO                            . ]

Officer injuries photographed?        [N/A - NO OFFICER INJURIES REPORTED ]

Department member(s) directed to upload Body Worn Camera (BWC) footage in
accordance with Duty Manual section L4433 and L4434? [YES ]

TASER downloaded? [NO  ] If YES, by whom?
Name                                    Badge
[                        ]              [        ]
Is this individual a member of the Crime Scene Unit? [      ]

Supervisory Use of Force form completed by:
Name                                    Badge
 [HUSSEY,JAMES              ]           [3574    ]



# SAN JOSE POLICE DEPT
## DISTRICT ATTORNEY HARDCOPY
### DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT          273.5A-2 273.5(A) PC DV SBI OR WEAPON
SUBMITTED TO DA FOR REVIEW

[  ] Chemical spray (e.g. OC/CS)              [  ] Officer vehicle contact
[  ] Impact projectile                        [ X ] K-9 contact
[  ] Knife, blade, or stabbing instrument     [  ] Other dangerous weapon


Check all items that you deployed/discharged in this use of force incident:
[  ] TASER drive stun
[  ] TASER probes deployed
[  ] TASER probes deployed (miss)


Location on suspect where you used force (check all that apply):
[  ] Not applicable                           [  ] Head
[  ] Neck/throat                              [  ] Front upper torso/chest
[  ] Rear upper torso/back                    [  ] Front lower torso/abdomen
[  ] Rear lower torso/back                    [  ] Front below waist/groin area
[  ] Rear below waist/buttocks                [ X ] Arms/hands
[  ] Front legs/feet                          [ X ] Rear legs


Suspect's erratic behavior as you perceived it at the time of the incident
(check all that apply):
[ X ] None                                    [  ] Signs of alcohol impairment
[  ] Signs of mental disability               [  ] Signs of drug impairment

[  ] Signs of physical disability             [  ] Signs of developmental disability


Was suspect injured (even if minor)?      [YES          ]
If YES, indicate suspect's injury level (select only one):
[INJURY
*SERIOUS BODILY INJURY involves a substantial risk of death, unconsciousness,
protracted and obvious disfigurement, or protracted loss or impairment of the
function of a bodily member or organ: wound requiring extensive suturing,
bone fracture, concussion.


Suspect injury type (check all that apply):
[  ] Unconsciousness                          [  ] Contusion
[  ] Concussion                               [  ] Bone fracture
[  ] Internal injury                          [ X ] Abrasion/laceration
[  ] Obvious disfigurement                    [  ] Gunshot wound
[  ] Stabbing wound                           [ X ] Complaint of pain


Medical aid the suspect received - choose highest applicable:

Case 5:23-cv-03490-NW Document 71 Filed 07/24/24 Page 25 of 95



# SAN JOSE POLICE DEPT
## DISTRICT ATTORNEY HARDCOPY
### DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT                    273.5A-2 273.5(A) PC DV SBI OR WEAPON
SUBMITTED TO DA FOR REVIEW

Were you injured (even if minor)?      [NO    ]

If YES, indicate your injury level (select only one):
[                                                    ]
*Serious Bodily Injury involves a substantial risk of death, unconsciousness,
protracted and obvious disfigurement, or protracted loss or impairment of the
function of a bodily member or organ: wound requiring extensive suturing,
bone fracture, concussion.


What type of injury did you sustain?   (check all that apply):
[   ]Unconsciousness              [   ]Contusion
[   ]Concussion                   [   ]Bone Fracture
[   ]Internal injury              [   ]Abrasion/Laceration
[   ]Obvious disfigurement        [   ]Gunshot wound
[   ]Stabbing wound               [   ]Complaint of pain

Medical aid you received – choose highest applicable:
[NO MEDICAL ASSISTANCE OR REFUSED ASSISTANCE                              ]

Was your injury caused by a pre-existing condition? [NO    ]


Primary officer activity immediately prior to force response (select only one):
[ATTEMPTING TO TAKE CUSTODY                                              ]

Did the use of force result from taking the suspect into custody? [YES  ]

Ty Mull
701 S. Abel St.
Milpitas, CA 95035

RECEIVED

JUL 2 4 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

450 Golden Gate Ave.

P.O. Box 36060

SF, CA 94102

County Jail
Generated Mail

-23- CV- 06110 - AMO -



© USPS 2019

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

FSC
MIX
Envelope
FSC® C137131

# EXHIBIT 2

**Creation Date:** July 2025

---

## FABRICATED REPORTS: POST-RELEASE
## (SJPD Versadex Report - Case No. 22-121-0580)

**Prepared For:**

Public Records Act Addendum Response

*Mullin v. Santa Clara County, et al.*

**Date:** July 21, 2025

*This exhibit evidences suspected post-release manipulation of public records by SJPD personnel. Metadata shows creation and modification occurred one 1 year after the original court filing, supporting the demand for a full forensic audit of SJPD records system.*



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
**\*\*\* FOR OFFICIAL USE ONLY \*\*\***

**GO# SJ 2022-221210580**                    **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

## General Offense Information

Reported on: **May-01-2022  (Sun.) 1652**
Occurred on: **May-01-2022  (Sun.) 1652**
Report submitted by: **4660**
Address: ▮▮▮ **SOLANO DR**
      Municipality: **SAN JOSE**
      District: **Y**   Beat: **Y4**   Grid: **325**
Felony/Misdemeanor: **FELONY**

## Offenses (Completed/Attempted)

Offense: # **1   417A2-2   DOMESTIC-417A2 PC BRNDSH F/ARM  -  COMPLETED**
Offense: # **2   273.5A-3   273.5(A) PC DV MINOR INJURY  -  COMPLETED**
Offense: # **3   422-1   422 PC CRIMINAL THREATS  -  COMPLETED**
Offense: # **4   646.9A-2   DOMESTIC - 646.9(A) STALKING  -  COMPLETED**
Offense: # **5   148A1-2   148(A)(1) PC RESIST ARREST  -  COMPLETED**
Offense: # **6   11377A-1   11377(A) HS POSN CNTRLD SUBS  -  COMPLETED**
Offense: # **7   148A1-1   148(A)(1) PC DELAY ARREST  -  COMPLETED**
Offense: # **8   USEFORCE-1   USE OF FORCE  -  COMPLETED**



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
**\*\*\* FOR OFFICIAL USE ONLY \*\*\***

**GO# SJ 2022-221210580**                                            **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

## Narrative Text

       **Type** SYNOPSIS
       **Author** 4660 - MALDONADO,TIMOTHY PATRICK
       **Related Date** May-02-2022  :12



On 05-01-2022, at approximately 1652, a violation of Penal Codes 273.5 – Domestic Violence, 417(a)(a) – Brandish Firearm, 422 – Criminal Threats, 649.9(a) – Stalking, 148(a)(1) – Resist Arrest, and violation of Health and Safety Code 11377(a) – Possession of Methamphetamine occurred near ███ Solano Drive in San Jose, Santa Clara County. The suspect and victim were in a ███████████████. The suspect had been knocking on ███████ doors specifically trying to locate the victim. The suspect located the victim's residence and returned multiple times. The victim was not at the residence. The victim arrived at the residence and the suspect was standing on the sidewalk. The victim confronted the suspect. The suspect pushed the victim. The suspect then punched the victim with a closed fist to the left side of her face causing her to fall to the ground. ████████████████████████████ The suspect then pointed a black firearm directly at the victim's face. The suspect told the victim she was lucky to still be alive. The victim got up and ran inside of the residence.

The suspect was later located after several calls for service regarding a male subject jumping fences into backyards. SJPD Air-3 gave several announcements for the suspect to surrender. The suspect did not comply and ultimately resisted, obstructed and delayed peace officers. SJPD K9 officers utilized a K9 to apprehend the suspect. The suspect was transported toe Valley Medical Center. Suspected methamphetamine was located on the suspect at the hospital. The suspect was later booked into Santa Clara County Jail.



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
*** FOR OFFICIAL USE ONLY ***

**GO# SJ 2022-221210580**                    **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

## Narrative Text

        **Type** SYNOPSIS
     **Subject** USE OF FORCE REPORTING
      **Author** 3796 - DELORENZO,MATTHEW J
  **Related Date** May-02-2022  1:18

```
General Offense Report#  [221210580]   SJPD Primary Agency? [YES ]
Did you include the "USEFORCE" offense code on the GO?
[NO, THIS IS A SUPPLEMENTAL REPORT                                 ]


Were multiple police agencies involved in the incident?      [NO  ]
Did you discharge a firearm?                                 [NO  ]
Did you use force on a suspect?                              [YES ]
Did this cause serious injury or death to a suspect?         [NO  ]
Did the suspect(s) assault you?                              [NO  ]
Did this cause serious injury to you?                        [NO  ]
Did this incident cause death to an officer?                 [NO  ]


Check all that apply to this Use of Force incident:
[ X ]Multiple incident locations
[   ]Incident occurred on a K-12 campus
[ X ]An arrest was made
[ X ]Incident resulted in a crime report
[ X ]Body Worn Camera RECORDING during incident


Initial contact reason (select only one):
[CRIME IN PROGRESS OR INVESTIGATING SUSP PERSONS OR CIRCUMSTANCES       ]


Number of suspects involved   [ 1]
(TO YOUR KNOWLEDGE, the total number of suspects who had force used on
them and/or who assaulted an officer)

Number of officers involved   [1  ]
(TO YOUR KNOWLEDGE, among officers present on the scene, the number who used
force on a suspect and/or were assaulted by a suspect)


SUSPECT INFORMATION
Suspect Name:              [   ]Unknown, suspect escaped
(Use drop-down menu to select from the list of Entities)

[                                                                       ]
```

**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
***\*\*\* FOR OFFICIAL USE ONLY \*\*\****

GO# SJ 2022-221210580                                417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM

Enter the suspect's name below IF it is not among the Entities listed above
Last Name:      [MULLIN                                              ]

Given Name(s):  [TYGHE            ] [                  ] [

Age in years:   [31 TO 35         ]
Gender:         [MALE          ]
Race:           [WHITE                      ]

Primary language spoken by suspect: [ENGLISH                ] [  ]Unknown

Did the suspect assault you?        [NO   ]

Suspect arrested and/or in custody? [In custody          ]


Did you perceive the suspect to be armed?        [YES  ]
If YES, indicate weapon type (check all that apply):
[ X ]Firearm                                    [  ]Other dangerous weapon
[  ]Knife, blade, or stabbing instrument        [  ]Unknown


Did you confirm the suspect to be armed?        [NO   ]
If YES, confirm weapon type (check all that apply):
[  ]Firearm
[  ]Firearm replica
    Firearm types (check all that apply):
       [  ]Handgun        [  ]Rifle
       [  ]Shotgun        [  ]Other firearm
[  ]Knife, blade, or stabbing instrument
[  ]Other dangerous weapon


Did suspect resist? [YES  ] If YES, choose highest level of resistance:
                        [ASSAULTIVE                ]

Did the suspect attempt to disarm you?  [NO   ]

Did you use force on this suspect?      [YES  ]

Type of force you used on the suspect (check all that apply):
[  ]Carotid restraint control hold          [  ]Threat of firearm
[  ]Other control hold/takedown             [  ]Electronic control device

[  ]Other physical contact (fists, feet, etc.) [  ]Discharge of firearm (miss

[  ]Blunt/impact weapon                     [  ]Discharge of firearm (hit)



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
*** FOR OFFICIAL USE ONLY ***

**GO# SJ 2022-221210580**                    **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

```
[  ]Chemical spray (e.g. OC/CS)        [  ]Officer vehicle contact
[  ]Impact projectile                  [ X ]K-9 contact
[  ]Knife, blade, or stabbing instrument [  ]Other dangerous weapon
```

Check all items that you deployed/discharged in this use of force incident:
```
[  ]TASER drive stun
[  ]TASER probes deployed
[  ]TASER probes deployed (miss)
```

Location on suspect where you used force (check all that apply):
```
[  ]Not applicable               [  ]Head
[  ]Neck/throat                  [  ]Front upper torso/chest
[  ]Rear upper torso/back        [  ]Front lower torso/abdomen
[  ]Rear lower torso/back        [  ]Front below waist/groin area
[  ]Rear below waist/buttocks    [ X ]Arms/hands
[  ]Front legs/feet              [ X ]Rear legs
```

Suspect's erratic behavior as you perceived it at the time of the incident
(check all that apply):
```
[ X ]None                        [  ]Signs of alcohol impairment
[  ]Signs of mental disability   [  ]Signs of drug impairment

[  ]Signs of physical disability [  ]Signs of developmental disability
```

Was suspect injured (even if minor)?      [YES          ]
If YES, indicate suspect's injury level (select only one):
[INJURY                                    ]
*SERIOUS BODILY INJURY involves a substantial risk of death, unconsciousness,
protracted and obvious disfigurement, or protracted loss or impairment of the
function of a bodily member or organ: wound requiring extensive suturing,
bone fracture, concussion.

Suspect injury type (check all that apply):
```
[  ]Unconsciousness              [  ]Contusion
[  ]Concussion                   [  ]Bone fracture
[  ]Internal injury              [ X ]Abrasion/laceration
[  ]Obvious disfigurement        [  ]Gunshot wound
[  ]Stabbing wound               [ X ]Complaint of pain
```

Medical aid the suspect received - choose highest applicable:



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
*** FOR OFFICIAL USE ONLY ***

**GO# SJ 2022-221210580**                              **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

[MEDICAL ASSISTANCE TREATED AT FACILITY AND RELEASED            ]

Was the suspect's injury caused by a pre-existing condition? [NO        ]

OFFICER INFORMATION
Officer Name:                                          Badge Number:
[DELORENZO,MATTHEW J                          ] [3796    ]
Age in years:       █████████            ]
Gender:         [Male        ]
Race:           [WHITE                              ]
On duty:        [YES    ]
Officer type:   [SWORN                            ]
Patrol shift:   [SECOND WATCH            ]
Officer dress:  [TACTICAL    ]
Years of experience:        [21  ]
Assignment (select only one): [SPECIAL OPERATIONS UNIT                ]

Did you use force against a suspect (or multiple suspects)?   [Yes ]
If YES, reason for use of force (check all that apply):
[ X ]To effect arrest
[ X ]To prevent escape
[ X ]To overcome resistance

Were you assaulted by suspect(s)?  [NO  ]

Type of force the suspect used on you (check all that apply):
[   ]Suspect physical contact          [   ]Impact Projectile
[   ]Suspect vehicle contact           [   ]Threat of firearm

[   ]Blunt/impact weapon               [   ]Discharge of firearm (miss)
[   ]Chemical Spray (e.g. OC/CS)       [   ]Discharge of firearm (hit)
[   ]Electronic control device         [   ]Other dangerous weapon
[   ]Knife, blade, or stabbing instrument  [   ]Animal

Location(s) on you where suspect(s) used force (check all that apply):
[ X ]Not applicable                    [   ]Head
[   ]Neck/throat                       [   ]Front upper torso/chest
[   ]Rear upper torso/back             [   ]Front lower torso/abdomen

[   ]Rear lower torso/back             [   ]Front below waist/groin are
[   ]Rear below waist/buttocks         [   ]Arms/hands
[   ]Front legs/feet                   [   ]Rear legs



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
*** FOR OFFICIAL USE ONLY ***

GO# SJ 2022-221210580                    417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM

Were you injured (even if minor)?    [NO   ]

If YES, indicate your injury level (select only one):
[                                        ]
*Serious Bodily Injury involves a substantial risk of death, unconsciousness,
protracted and obvious disfigurement, or protracted loss or impairment of the
function of a bodily member or organ: wound requiring extensive suturing,
bone fracture, concussion.


What type of injury did you sustain?   (check all that apply):
[   ]Unconsciousness            [  ]Contusion
[   ]Concussion                 [  ]Bone Fracture
[   ]Internal injury            [  ]Abrasion/Laceration
[   ]Obvious disfigurement      [  ]Gunshot wound
[   ]Stabbing wound             [  ]Complaint of pain

Medical aid you received - choose highest applicable:
[NO MEDICAL ASSISTANCE OR REFUSED ASSISTANCE                    ]

Was your injury caused by a pre-existing condition? [NO   ]


Primary officer activity immediately prior to force response (select only one):
[ATTEMPTING TO TAKE CUSTODY                                 ]

Did the use of force result from taking the suspect into custody? [YES  ]



| | SAN JOSE POLICE DEPT |
|---|---|
| | PUBLIC HARDCOPY |
| | *** FOR OFFICIAL USE ONLY *** |
| GO# SJ 2022-221210580 | 417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM |

## Narrative Text

**Type** NARRATIVE
**Author** 3746 - HERNANDEZ,FRANCISCO J
**Related Date** May-01-2022 16:54

On 05/01/2022, at approximately 1654 hrs, I was in full uniform working in fully marked patrol vehicle logged on as District Yellow supervisor, 6Y10. I was equipped with a Department issued body-worn camera.

I responded to the area of ███ Solano Dr on a report of a known subject (later identified as Tyghe Mullin) who attempted to force entry into a residence. Upon my arrival, units advised the suspect had fled the area on foot, east on Solano Dr. Units updated that Mullin had threatened the victim with a firearm. I circulated the area along with other officers.

At approximately 1708 hrs, a resident ███████████ ) at ███████████ called and stated an unknown subject had entered his neighbors backyard. ███ provided a description of the subject and last known direction of travel. The physical description of the subject was similar to that of Mullin.

Ofc Balaburova #4650 responded and made contact with ███ at Curie Dr and Baguio Ct. Ofc Balaburova advised Communications that a subject (with similar description of Mullin) had knocked on the front door of several. There was no direction of travel from Baguio Ct. Air3 was not available at this time.

At approximately 1740 hrs, 61X4 Ofc's Quinonez #4601 and Pedroza #5030, advised a subject (referring to Mullin) had jumped a fence from ███ Curie Dr. Air3 responded and observed Mullin jumping several fences toward Manila Dr.

Additional officers responded to the area and set a perimeter. The perimeter was:
-West: Camino Verde
-South: Manila Dr
-North: Curie Dr
-East: Applegate Ct

K9 Unit Ofc's Fonua #3500, Delorenzo #3796, Dunn #4309 and Fernando #4531 responded to the scene.

At approximately 1754hrs, the residents of ███████████ advised me the suspect was in their backyard. I advised the residents to remain secure in the home. I advised Communications of the information. A couple minutes later, a subject (Mullin) poked his head out from the broken fence boards of ███ Sulu Ct. Mullin saw officers and retreated back into the rear yard.

Additional units responded to the scene and entered the rear yards of ███ Sulu Dr and ███ Camino Verde to further contain Mullins.

At approximately 1827 hrs, Air3 utilized the helicopter's public address system and provided the SJPD Canine Unit announcement. Mullin did not surrender and remained concealed in the yards of ███ Camino Verde and ███ Sulu Ct.

At approximately 1838 hrs, Ofc Fonua advised the rear of ███ Camino Verde was clear. At his time, myself, Sgt. Hussey #3574, Ofc Delorenzo (and his canine) along with a Metro unit officer were at the side gate of ███████████ At approximately 1844 hrs, Mullin ran along the south fence line of ███ Sulu Ct (toward our location). K9 Ofc "Cooper" apprehended Mullin. Sgt Hussey and I approached Mullin. I grabbed Mullin's right hand and ordered Mullin to roll over. Sgt. Hussey took hold of Mullin's right hand and i grabbed Mullin's left hand.



I also attempted to roll him by twisting Mullin's left hand. Mullin rolled onto his stomach and he was taken into custody without further incident.

Mullin was taken to the sidewalk and provided medical attention by EMS. He was later transported via ambulance (Medic 55) to Valley Medical Center for further medical attention. Ofc Balaburova followed the ambulance and remained at VMC.

Ofc's Dietz #4801, Rousseu #4712, Morales #4480 and ███████ searched the yards of the homes where Mullins was observed. The addresses included:
██████████ Camino Verde
-█████████Sulu Ct, along with the █████ homes on Sulu Ct.
-█████████ Curie Dr
████████ residences on Baguio Ct
███████████ Manila Dr

In addition, officers canvassed the █████ of Curie Dr for surveillance cameras.

Lt. McKim #3893 was advised of the incident and responded to the scene.
Sgt. Hussey #3574 conducted a Use of Force investigation. Refer to his supplemental for additional information.

Refer to Ofc Maldonado's #4660 General Offense report for further information.


End Report



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
*** FOR OFFICIAL USE ONLY ***

GO# SJ 2022-221210580                    417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM

## Narrative Text

**Type** NARRATIVE
**Author** 4585 - KARTSANG,TENZIN KALDEN
**Related Date** May-02-2022  : 3

On 05/01/22 at approximately 1720 hours, I was dispatched to a domestic violence which occurred in the area of ▇ Curie Dr. I was in a fully marked patrol vehicle and in my full police uniform assigned as "61X2".

Upon arrival, I activated my AXON Body Camera. I was assigned to help out with perimeter and was in the backyard of ▇ Manila Dr.

The suspect was subsequently arrested at a later time. After the suspect was taken into custody, I was assigned to help out with canvassing addresses where the suspect possibly made entry. The following addresses are the areas I made contact with.

I made contact at ▇▇▇▇▇. I was not able to contact anyone inside the residence. I located a Ring doorbell camera located at the front door. I was able to contact the residence via Ring doorbell. The residence was advised to contact San Jose Police if they had footage of the incident once they arrived back home.

I made contact at ▇▇▇▇▇. I made contact with the residence. They stated that the camera located at the front of the house was in-operational and did not capture the incident.

I made contact at ▇▇▇▇▇. The residence there stated that he had a camera located at the front of the house. He was not able to access the camera. I handed him a case receipt and advised him to contact San Jose Police if he was able to access the footage at a later time.

I made contact at ▇▇▇▇▇. The residence there did not have surveillance cameras and did not witness the incident.

Refer to Officer Maldonado #4660 General Offense Report for further details.

Refer to my BWC for further details.



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
**\*\*\* FOR OFFICIAL USE ONLY \*\*\***

GO# SJ 2022-221210580                               417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM

## Narrative Text

**Type** NARRATIVE
**Author** 4660 - MALDONADO,TIMOTHY PATRICK
**Related Date** May-02-2022  :12

On 05-01-2022, Officer Adgar #4552 and I were assigned to the Patrol Division, Bureau of Field Operations for the San Jose Police Department (SJPD). We were in full police uniform and driving a fully marked San Jose Police Department patrol vehicle (#663), logged in as 62Y2. My department issued body worn camera (BWC) was activated during the incident.

At approximately 1655 hours, Officer Adgar and I responded to a disturbance located at ████ Solano Drive in San Jose, Santa Clara County. The following is synopsis for which several reporting party's (RP) reported to SJPD Communications. The initial RP reported her ████████ was trying to break into the house. The RP was not answering questions and disconnected. A second RP called and reported they needed the police now. The RP reported there was going to be a battery.

A previous call for service was pending at the residence regarding a male who was identified as by the RP as Tyghe Mullin, DOB: 07-08-1988 (Event #22-121-0484). The RP reported in the event that the RP's ████████ hit her one hour ago and she wanted to set him up so police could arrest him.

Prior to my arrival, Officer Balaburova #4650 who was on scene advised SJPD Dispatch was no longer at the residence and that the male had a gun. The male was last seen eastbound on Solano Drive.

Upon my arrival, I contacted the victim who verbally identified herself as ████████ DOB: ████████. Victim ████ gave me a statement. Refer to Victim ████████ statement text document.

Victim ████ identified the suspect as her ████████ Tyghe Mullin. Victim ████ described him as a white male adult approximately 6'00" thin build, white shirt, blue jeans. Victim ████ stated Suspect Mullin had a black firearm. Officer Adgar later showed Victim ████ a previous booking. Victim ████ positively identified the suspect. Refer to Officer Adgar's supplemental report for additional information.

Based on Victim ████ statement, Suspect Mullin was in violation of Penal Codes 273.5 – Domestic Violence, 417(a)(2) – Brandish Firearm, 422 – Criminal Threats. I advised SJPD Dispatch of the violations.

I observed Victim ████ had ████████████████. Victim ████ also had a ████████ to the area. Victim ████ declined medical. Officer Adgar later took digital photos and uploaded the digital photos to the Axon Capture database.

I contacted the victim's ████████ who identified himself by his California driver's license as ████, DOB: ████ Other ████ gave me a statement. Refer to Other ████ statement text document for additional information.

I contacted the home owner who identified herself by her California driver's license as ████████, DOB: ████████ Victim ████ gave me a statement. Refer to Victim's ████ statement text document for additional information.

Victim ████ stated Suspect Mullin came to the residence three times, the first time at around 1400 hours. The third time Suspect Mullin came to the residence he told Victim ████ if she weren't so nice I would gag and kill you. Vicitm ████ was not home at the time. Victim ████ stated she began drinking afterwards. Victim ████ stated she was afraid and



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
**\*\*\* FOR OFFICIAL USE ONLY \*\*\***

**GO# SJ 2022-221210580**                    **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

wanted to be a victim of criminal threats.

I observed Victim ███ had red / glossy eyes, a strong odor of an alcoholic beverage and was slurring her words. Victim ███ had difficulty remembering the entirety of the incident. The charge of criminal threats against Victim ███ is pending DA review.

I asked Victim ███ if she wanted an Emergency Protective Restraining Order (EPRO) against the suspect. Victim ███ agreed to an EPRO. I later contacted the on-call judge to obtain an EPRO. Judge Bonini granted the EPRO. I provided Victim ███ with a copy of the EPRO.

A records check through Records Management System (RMS) on Victim ███ revealed she also has an AKA of ███████. The RMS check revealed ████████████████████████████████████████████████████████████████████████████

Officer Adgar contacted a ███ who advised him Suspect ███ was walking door to door trying to find Victim ███. Suspect Mullin mentioned Victim ███ by name in an attempt to locate her. Refer to Officer Adgar's supplemental report for additional information.

Officer Adgar canvassed the area and contacted a neighbor who had video footage of Suspect Mullin in the area. Officer Adgar provided the neighbor with a link to upload the video footage to the Axon Capture database.

Officer Adgar completed the Domestic Violence Supplemental Form and Sexual Assault / Human Trafficking Assessment forms were completed. Refer to the Domestic Violence Supplemental Form and Sexual Assault / Human Trafficking Assessment templates for additional information.

Officer Adgar and I canvassed the area of the incident but did not locate any witnesses or cameras the caught the incident.

While at Victim ███ residence, SJPD Dipatch received multiple calls for a suspicious person hopping fences in the area. Officers located Suspect Mullin and he was determined to be in the backyards of ███ Sulu Court and ███ Camino Verde Drive.

Sgt. Hernandez #3746 and Sgt. Hussey #3574 arrived on scene and were updated on the incident. Lt. McKim #3893 was notified and later responded to the scene.

Officers formed a perimeter around the residences in order to contain the suspect. SJPD Air Support Unit (Air-3), METRO Unit, VCET Unit and K9 Units arrived on scene to assist. Air-3 made multiple announcements via loud speaker to for Suspect Mullin to surrender. Suspect Mullin made no attempts to surrender and was seen multiple times in moving around in the two backyards.

San Jose Fire Department (SJFD) and Paramedics were advised to stage.

Air-3 made several additional announcements for the Suspect Mullin to surrender. Suspect Mullin made no attempt to surrender. Officers formed an arrest team including K9 handler Officer Delorenzo #3796. The K9 was utilized in the backyard of ███ Sulu Court and officers apprehended Suspect Mullin. Suspect Mullin sustained a dog bite. Refer to K9 Officer Delorenzo's supplemental report for additional information.

Suspect Mullin was brought to the street in front of ███ Sulu Court. SJFD and Paramedics arrived on scene and provided medical attention. Suspect Mullin was transported to Valley Medical Center (VMC) via Medic 55. Officer Balaburova followed Medic 55 to VMC.

Officers canvassed the area for witnesses, camera footage, and a firearm. No firearm was located. Refer additional supplemental reports from officers or community service officers



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
*** FOR OFFICIAL USE ONLY ***

**GO# SJ 2022-221210580**                                    **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

## Narrative Text

**Type** SUPPLEMENTAL
**Author** 4552 - ADGAR,JAMES
**Related Date** May-01-2022 20:29

On 5/1/2022, I was working as  a police officer for the city of San Jose CA. I was assigned to swing shift patrol, working a two officer patrol car, call sign "62Y2" with Ofc Maldonado #4660. We were driving a marked police vehicle, wearing full police uniform, and wearing our activated department issued BWC's during the investigation.

At approximately 1655 hours, we responded to a priority disturbance at a residence located at ███ Solano Drive.

Ofc Maldonado contacted the victim and updated that it was a domestic violence assault involving a firearm and the suspect had left the area on foot prior to our arrival. I contacted a ███████ outside of his residence located at ███ Solano Drive. He stated that earlier that day at around 1100 hours, a male had come by his residence and was knocking on the door. He stated that when he answered the door the male came was asking him if a ███████ was living there. The male at his door also told him that she sometimes goes by ███████." When he told him that she doesn't live there but she might live at a different house down the street the male left the area. He stated he saw the same male running down Solano Drive about two minutes before police arrived in the area. He described the male as a white, male, adult, with brown hair, wearing a blue shirt and jeans. He would be able to recognize the male if he saw him again.

I canvassed the area and located at ███████████ that had operable cameras. The cameras did not cover where the assault took place but the resident stated that a male was out front of her house at around 1100 hours, looking at a vehicle parked on the street and staring at her residence. She did not confront the male or call 911 because he saw him talking with her neighbor a few minutes later via camera. I provided her a AXON Capture link and confirmed she received it and requested she upload any video with the male subject around her residence. It should be documented that the Video link provided was under the original case number at the time of the investigation SJPD Case #221210571.

I assisted Ofc Maldonado and completed the SJPD Domestic Violence Supplemental forms that were later transcribed with this report.

I used a police database and conducted a records query on the suspect and located ███████ photographs. Due to the Victim having a ████████████████ with the Suspect I conducted a photo flash utilizing the ███████████ photographs. The Victim positively identified the Suspect. I uploaded the photographs used for the photo flash identification into AXON Capture as evidence.

I photographed the Victims injuries and the scene using my department issued cell phone and uploaded the photographs into AXON Capture as evidence.

Refer to Ofc Maldonado's General Offense Report and corresponding supplemental reports for further details.

| | SAN JOSE POLICE DEPT |
|---|---|
|  | **PUBLIC HARDCOPY** |
| | *** FOR OFFICIAL USE ONLY *** |
| **GO# SJ 2022-221210580** | **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM** |

## Narrative Text

**Type** SUPPLEMENTAL

**Subject** COMMANDER USE OF FORCE SUPP

**Author** 3893 - MCKIM,BRENT L

**Related Date** May-02-2022  1:46

On 5/1/2022, at approximately 1732 hours, I was assigned as the Southern Division Watch Commander. My call sign was 5052. I was notified of a suspicious circumstances call at ▇ Curie Drive in San Jose. I monitored the radio traffic while I was on another event and attached to the event at 1829 hours. As I was driving to the event, I noted that a perimeter had been set up and that the San Jose Police K9 had been deployed.

I arrived at 1846 hours and contacted Sergeant Hernandez #3746 and Sergeant Hussey #3575, who provided me with an update:

The initial report was that a known male in his early 40s (suspect) was attempting to force entry into a residence. The suspect fled the area on foot. Officers investigated further and discovered the suspect had pushed and struck his ▇ and threatened to kill her while brandishing a handgun (core transaction).

Officers established a perimeter and called for K-9 units and Air 3. Both arrived shortly thereafter and assisted with the location and apprehension of the suspect. K9 Officer Delorenzo's #3796 K9 had bitten the suspect in the leg and the hand. Sergeant Hussey #3575 and Sergeant Hernandez #3746 turned the suspect over and handcuffed him.

The suspect was provided medical attention by EMS at the scene. He was then transported via ambulance to Valley Medical Center for further medical attention. The suspect sustained a dog bite to his leg and hand, and some lacerations.

Sergeant Hernandez #3746 ▇ while taking the suspect into custody by declined medical.

Upon his release from the hospital, the suspect was booked into Santa Clara County Jail for Domestic Violence, Criminal Threats, Brandishing a Weapon and Resisting Arrest.

I conducted a Category III use of force investigation per Duty Manual Section L 2605.5.

Sergeant Hussey #3575 completed the use of force investigation. I reviewed the body worn camera video from Sergeant Hussey #3575 and Sergeant Hernandez #3746. I determined this was a Category 3 Use of Force based on the bite by the San Jose Police K9.

I directed Sergeant Hussey #3575 to ensure the following tasks were completed:
* Canvass for witnesses and video
* Photos of the suspect, officers and scene taken
* Authored a supplemental report
* Evidence collected from the scene and suspect
* Use of force templates completed
* Review officers' BWC footage
* Obtain a statement of the suspect
* Medical aid provided to the suspect, transported to VMC for medical treatment
* The involved officers' reports were reviewed and signed off
* Completion of a Daily Log entry

Sergeant Hussey #3575 conducted the use of force investigation. See officers' and Sergeant Hussey's #3575 and reports for their actions and details.



| SAN JOSE POLICE DEPT | |
|---|---|
| **PUBLIC HARDCOPY** *** FOR OFFICIAL USE ONLY *** | |
| GO# SJ 2022-221210580 | 417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM |

## Narrative Text

**Type** USE OF FORCE - SUPERVISOR
**Author** 3574 - HUSSEY,JAMES
**Related Date** May-02-2022  1:25

On Sunday May 1, 2022, I was working as the district X-ray, Sergeant (6X10).  District X-ray is located in the Southern Division of San Jose.  At approximately 1708 hrs. the resident at ███ Curie Drive reported an unknown male just jumped the fence into his backyard.  The matched the description of a male involved in a Domestic Violence incident, where the suspect struck his ███████████ and threatened to kill her while pointing a gun at her.  I responded to the area to assist with setting a perimeter.

Officers met with the victim.  She confirmed the suspect (identified as Mullen, Tyghe) was her ████████ whom she ██████████████████████ She stated the Mullen pushed her and punched her in the face causing an injury.  Mullen threatened to kill her while pointing a pistol at her.

Several reporting parties called 911-dispatch and reported a male jumping fences in and around the area.  At 1810 hrs. a reporting party called 911-dispach and reported the suspect was seen in the backyard of ████Camino Verde.  The reporting party stated the male's face was bloody.  Due to heightened threat level of the suspect being armed with a gun and the suspect's active evasion of the police, San Jose K-9 officers responded to assist with searching for the suspect.  A perimeter was set around ███ Camino Verde and ███ Sulu Court.  Air-3 made several K-9 announcements over the helicopters PA system.  The announcements could be heard loud and clear from the street around the residence.  Officers cleared the backyard of ███ Camino Verde.  Officer ████████████ and K-9 Officer Delorenzo #3796 were staged preparing to enter and clear the backyard of ███ Sulu Court; Air-3 advised the male was running towards officers in the backyard.  Officer ███████ gave several announcements to the male to stop.  The male disobeyed the Officers orders and continued running at the Officers, the K-9 was used to apprehend the suspect.

I assisted in taking the suspect into custody.  I took control of Mullen's left wrist and upper arm, I helped roll the Mullen onto his stomach so we could place handcuffs on him.  Once Mullen his stomach, I pulled his arm behind his back and Sergeant Hernandez #3746 placed him into handcuffs.  Officers escorted Mullen out to be treated by fire and Paramedics who were on-scene.

While on-scene I insured the following investigative steps were taken:

A canvass for witnesses and surveillance cameras were conducted.
The scene was photographed.
The suspect was transported to Valley Medical Center (VMC) for medical attention.
The victim's injuries were photographed.
I reviewed and signed off reports.

I responded to VMC to interview Mullen.  While waiting to interview Mullen the attending nurse asked Mullen how he had gotten his injuries.  Mullen stated that it was his fault and he had been bitten by a Police dog.  The nurse asked what had happened to his left hand.  Mullen stated he had put his hand in the dog's mouth to try and pull the dog off of his leg.  I activated my BWC and read Mullen his Miranda rights per my Department issued Miranda card.  Mullen and answered "yes" to all the questions and stated he would talk to me.  Below is a synopsis of Mullen's statement to obtain a full and accurate statement refer to my BWC.

Statement of Mullen:
Mullen stated that he knew the police were outside the yard he was in because he heard Air-3 overhead.  He stated he heard the announcements Air-3 gave but he did not come out because



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
*** FOR OFFICIAL USE ONLY ***

**GO# SJ 2022-221210580**                    **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

## Narrative Text

        **Type** USE OF FORCE - SUPERVISOR
     **Subject** USE OF FORCE REPORT SUPERVISOR
      **Author** 3574 - HUSSEY,JAMES
   **Related Date** May-02-2022  1:26

```
Related General Offense number  [221210580 ]


Did a supervisor respond to the incident?  [YES ]
If YES, indicate name and badge of responding supervisor:
Name                                     Badge No.
[HUSSEY,JAMES                     ]      [3574    ]


On a category scale of 1 to 4 (1 being the lowest), what was the highest
category of force applied by the officer(s) during this incident?   [3   ]
(refer to Duty Manual section L2605.5 for reference to category levels)



Did a command officer respond to this event?[YES                          ]
If YES, indicate name and badge of command officer:
Name                                     Badge
[MCKIM,BRENT L                    ]      [3893    ]


Was the 'USEFORCE' offense code added to the GO? [YES ]


To the best of your knowledge, what is the total number of suspects
that had force used on them in relation to this event? [1  ]


If the answer to any of the questions below require further detail,
please expound in a SUPPLEMENTAL report.

Did a supervisor direct use of force?      [NO  ]

Other video evidence obtained?             [NO  ]

Canvass completed?                         [YES ]

Scene photos?                              [YES ]

Recorded statement obtained from suspect? [YES ]
```



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
**\*\*\* FOR OFFICIAL USE ONLY \*\*\***

**GO# SJ 2022-221210580**                    **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

Suspect photographed?                    [YES ]

Chemical sample obtained from suspect?    [NO  ]

Suspect weapon photographed?             [NO  ]

Suspect weapon recovered?                [NO                              ]

Officer injuries photographed?           [N/A – NO OFFICER INJURIES REPORTED ]

Department member(s) directed to upload Body Worn Camera (BWC) footage in
accordance with Duty Manual section L4433 and L4434? [YES ]

TASER downloaded? [NO  ] If YES, by whom?
Name                                     Badge
[                                ]       [        ]
Is this individual a member of the Crime Scene Unit? [      ]


Supervisory Use of Force form completed by:
Name                                     Badge
 [HUSSEY,JAMES                  ]        [3574    ]



**SAN JOSE POLICE DEPT**
**PUBLIC HARDCOPY**
**\*\*\* FOR OFFICIAL USE ONLY \*\*\***

**GO# SJ 2022-221210580**                    **417A2-2 DOMESTIC-417A2 PC BRNDSH F/ARM**

**\*\*\* END OF HARDCOPY \*\*\***

# EXHIBIT 3

## COMPARATIVE ANALYSIS OF REPORT VERSIONS

**Commander Use of Force Supplemental**
**Author: McKim, Brent (#3893)**
[SJPD Versadex Report - Case No. 22-121-0580]

**Prepared For:**
Public Records Act Adendum Response
*Mullin v. Santa Clara County, et al.*
Date: July 21, 2025

*This exhibit demonstrates material alterations between fabricated and original versions of Commander Brent McKim's Supplemental Use of Force report (SJPD Case No, 22-121-0580). Fabricated Versions 2 and 3, generated post-release (July 2025), exhibit changes to formatting, narrative content, and metadata timestamps inconsistent with contemporaneous creation. Notable differences include modification of incident times (May 1, 2022 vs. May 2, 2022). narrative shifts regarding suspect behavior and force deployment, and removal of elements present in the original. The original Version (filed in federal court May 14, 2024) reflects unaltered contemporaneous reporting, serving as baseline evidence of record integrity prior to suspected tampering.*

COMMANDER USE OF FORCE SUPPLEMENT
3893 - MCKIM, BRENT
**VERSION 2, JULY 2025**

## Narrative Text

**Type** SUPPLEMENTAL

**Author** ▮▮▮▮▮▮▮▮▮▮

**Related Date** May-01-2022  1:02

On 05/01/2022 at approximately 1645 hours, I responded to a family disturbance/suspicious person located at ▮▮▮ Solano Drive and ▮▮▮ Curie Drive in San Jose. I was wearing full police uniform with visible San Jose Police Patches and I was equipped with my body worn camera.

While en route to the call, Officers updated that the suspect was armed with a black handgun and that he was wanted for 273.5 P.C. Felony Domestic Violence, 417 P.C. Brandishing a weapon, and 422 P.C. Criminal Threats. The suspect was described as a white male, slick back hair, blue shirt and black jeans.

I also learned that the suspect had fled the scene and was jumping fences to residences in the area. I responded to front of ▮▮▮ Sulu Court to assist with a search/perimeter assignment. I was standing in an open side gate looking down the fence line of ▮▮▮ Sulu Court. It was believed that the suspect was hiding from the Police in the backyard ▮▮▮ Camino Verde Drive.

The San Jose Police helicopter, AIR3 was flying above and communicated to Officers that the suspect was running in the backyard of ▮▮▮ Sulu Court along the fence line towards Officers.

I saw the suspect, a white male, shirt less, black pants running directly at me along the fence line. I locked eyes with the suspect and immediately gave the suspect commands to place his hands up. The suspect did not comply with my commands. I saw the suspect duck behind a grey shed and I communicated to the K9 Officer where the suspect had ran to and what he was wearing.

I observed the K9 run by me and approach the suspect. See K9 Officer Delorenzo #3796 report for further information. As I approached the suspect, I gave him more commands to place his hands where I could see them. The suspect did not comply. The suspect was then taken into custody by Sgt Hussey 3574 and Sgt Hernandez.

My body worn camera was activated during the incident. I uploaded my bwc at the end of my shift.

COMMANDER USE OF FORCE SUPPLEMENT
3893 - MCKIM, BRENT
VERSION 3, JULY 2025

## Narrative Text

    **Type** SUPPLEMENTAL
   **Subject** COMMANDER USE OF FORCE SUPP
   **Author** 3893 - MCKIM,BRENT L
  **Related Date** May-02-2022 1:46

On 5/1/2022, at approximately 1732 hours, I was assigned as the Southern Division Watch
Commander. My call sign was 5052. I was notified of a suspicious circumstances call at ▉
Curie Drive in San Jose. I monitored the radio traffic while I was on another event and
attached to the event at 1829 hours. As I was driving to the event, I noted that a perimeter
had been set up and that the San Jose Police K9 had been deployed.

I arrived at 1846 hours and contacted Sergeant Hernandez #3746 and Sergeant Hussey #3575,
who provided me with an update:

The initial report was that a known male in his early 40s (suspect) was attempting to force
entry into a residence. The suspect fled the area on foot. Officers investigated further and
discovered the suspect had pushed and struck his ▉ and threatened to kill her
while brandishing a handgun (core transaction).

Officers established a perimeter and called for K-9 units and Air 3. Both arrived shortly
thereafter and assisted with the location and apprehension of the suspect. K9 Officer
Delorenzo's #3796 K9 had bitten the suspect in the leg and the hand. Sergeant Hussey #3575
and Sergeant Hernandez #3746 turned the suspect over and handcuffed him.

The suspect was provided medical attention by EMS at the scene. He was then transported via
ambulance to Valley Medical Center for further medical attention. The suspect sustained a
dog bite to his leg and hand, and some lacerations.

Sergeant Hernandez #3746 ▉ while taking the suspect into custody by declined
medical.

Upon his release from the hospital, the suspect was booked into Santa Clara County Jail for
Domestic Violence, Criminal Threats, Brandishing a Weapon and Resisting Arrest.

I conducted a Category III use of force investigation per Duty Manual Section L 2605.5.

Sergeant Hussey #3575 completed the use of force investigation. I reviewed the body worn
camera video from Sergeant Hussey #3575 and Sergeant Hernandez #3746. I determined this was
a Category 3 Use of Force based on the bite by the San Jose Police K9.

I directed Sergeant Hussey #3575 to ensure the following tasks were completed:
* Canvass for witnesses and video
* Photos of the suspect, officers and scene taken
* Authored a supplemental report
* Evidence collected from the scene and suspect
* Use of force templates completed
* Review officers' BWC footage
* Obtain a statement of the suspect
* Medical aid provided to the suspect, transported to VMC for medical treatment
* The involved officers' reports were reviewed and signed off
* Completion of a Daily Log entry

Sergeant Hussey #3575 conducted the use of force investigation. See officers' and Sergeant
Hussey's #3575 and reports for their actions and details.

COMMANDER USE OF FORCE SUPPLEMENT
3893 - MCKIM, BRENT
**ORIGINAL VERSION, MAY 2022**

Case 3:23-cv-06110-AMO    Document 14    Filed 05/14/24    Page 1 of 9



## SAN JOSE POLICE DEPT

### DISTRICT ATTORNEY HARDCOPY

DISTRICT ATTORNEY COPY ***FOR OFFICIAL USE ONLY***

GO# SJ 2022-221210580 COMPLAINT
SUBMITTED TO DA FOR REVIEW

273.5A-2 273.5(A) PC DV SBI OR WEAPON

**Narrative Text**

Type SUPPLEMENTAL

Subject COMMANDER USE OF FORCE SUPP

Author 3893 - MCKIM ▓▓▓▓

Related Date May-02-2022 1:46

3-23 ●CV-06110-AMO    **RECEIVED**

MAY 14 2024

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

On 5/1/2022, at approximately 1732 hours, I was assigned as the Southern Division Watch
Commander. My call sign was 5052. I was notified of a suspicious circumstances call at ▓▓
▓▓▓▓ in San Jose. I monitored the radio traffic while I was on another event and
attached to the event at 1829 hours. As I was driving to the event, I noted that a perimeter
had been set up and that the San Jose Police K9 had been deployed.

I arrived at 1846 hours and contacted Sergeant Hernandez #3746 and Sergeant Hussey #3575,
who provided me with an update:

Tyghe James Mullin
2464 South Bascom Avenue, No. 5
Campbell, CA 95008
Tel: (669) 324-3573
TyMullin0708@Gmail.com
Ty.Mullin.InPropria@Outlook.com

*Filed In Propria Persona*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TYGHE JAMES MULLIN, | Case No. 3:23-cv-04399-AMO |
| Plaintiff, | **NOTICE OF SUBMISSION OF EVIDENTIARY MATERIALS AND STATEMENT OF RECORD REGARDING VIOLATIONS OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS AND MUNICIPAL LIABILITY UNDER MONELL** |
| v. | |
| THE CITY OF SAN JOSE, a municipal corporation; JENNIFER MAGUIRE, individually and in her official capacity as City Manager; PAUL JOSEPH, individually and in his official capacity as Acting Chief of the San Jose Police Department; JAMES PATRICK HUSSEY, individually and in his official capacity as a San Jose Police Sergeant; MATTHEW JOSEPH DELORENZO; individually and in his official capacity as a San Jose Police Officer, | [Filed pursuant to U.S. Const. amend. IV, XIV; 42 U.S.C. §1983; Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978); Graham v. Connor, 490 U.S. 386 (1989); Brady v. Maryland, 373 U.S. 83 (1963); Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001).] |
| Defendants. | **Judge:** Hon. Araceli Martinez-Olguin<br>**Date:** [To be assigned]<br>**Time:** N/A<br>**Dept:** Courtroom 10, 19th Floor |

# PRELIMINARY STATEMENT
# AND NOTICE TO THIS HONORABLE COURT

Plaintiff respectfully submits this **Notice of Evidentiary Materials and Statement of Record** to this Honorable Court in furtherance of judicial efficiency and the accurate administration of justice in this matter.

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Hozbanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

This submission provides critical evidentiary materials obtained from Defendants' own internal records, including dispatch **CAD logs**, **radio transcripts**, **body-worn camera** (BWC) footage, and related communications. These materials were concealed for nearly three years until their release on at least June 13, 2025, and establish a factual record demonstrating violations of Plaintiff's constitutional rights, including:

• Unlawful seizure without probable cause;

• Excessive use of force in violation of the Fourth Amendment;

• Fabrication of official records in violation of due process under the Fourteenth Amendment; and

• Suppression and obstruction of exculpatory evidence required to be disclosed under **Brady v. Maryland,** 373 U.S. 83 (1963), and **Giglio v. United States,** 405 U.S. 150 (1972).

These materials further substantiate municipal liability pursuant to **Monell v. Department of Social Services,** 436 U.S. 658 (1978), based on official practices, policies, failures in supervision, and deliberate indifference to constitutional violations.

Plaintiff respectfully submits that this evidentiary record is essential for this Court's consideration in evaluating the ongoing constitutional violations, the credibility of official narratives, and the systemic deficiencies in oversight and accountability by the City of San Jose and its agents.

This filing is made in good faith, not to harass or burden the defendants, but to ensure that the factual record is complete, accurate, and available for the Court's review.

This is submitted as both formal **Notice and a Statement of Record**. Because the record matters. Because the Constitution matters. And because pretending this didn't happen is not an option.

*(Plaintiff submits this Notice in good faith and for the purpose of ensuring the accuracy of the record, the integrity of the proceedings, and the protection of Plaintiff's constitutional rights.)*

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

# STATEMENT OF FACTS

1. On May 1, 2022, Plaintiff was subjected to an unlawful seizure by officers of the San Jose Police Department (SJPD) predicated on falsified dispatch information, fabricated Computer Aided Dispatch (CAD) logs, and an intentionally escalated law enforcement response unsupported by probable cause.

2. On May 1, 2022, at approximately [17:43], a dispatch call was initiated regarding the Plaintiff. The original CAD event log (attached as Exhibit A) reflects a routine, non-violent response with limited units deployed and minimal escalation.

3. Shortly thereafter, the CAD event was retroactively cross-referenced to an unrelated event (P221210620) at **[17:52:43]**, as reflected in the manipulated CAD (attached as Exhibit B). This cross-reference does not exist in the original record.

4. The manipulated CAD further shows an abnormal surge of dispatch activity between 17:51 and **[17:53]**, with units 61A1, 61A3, 61A4, 61T2, 6Y10, and air support being assigned in a manner that is both procedurally and logistically implausible within the compressed time frame.

5. Remarks such as "guy locked down," "heavy tree cover," and other tactical commentary appear only in the manipulated version, with no basis in the original CAD timeline.

6. This fabricated escalation was not based on real-time exigencies but rather was an after-the-fact construction of a false narrative, intended to establish probable cause retroactively and justify the excessive deployment of force against Plaintiff.

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

7.  Computer-Aided Dispatch (CAD) record shows that **Incident No. P22-121-0580 was fabricated from inception**. The dispatch was created without a legitimate reporting party, without a verified complaint, and without any lawful basis for deployment. (*See **Exhibit A** – CAD Event Records Comparison; **Exhibit B** – Dispatch Audio Transcript.*)

8.  The CAD record for **P221210580** was **fraudulently cross-referenced to another incident**, **P221210571**, which itself **contained no active reporting party** and **no validated emergency**. This cross-reference served as the foundation for falsely portraying the incident as an unfolding crime requiring heightened immediate police intervention. (*See **Exhibit A** – CAD Comparison Table; **Exhibit A-1** and **Exhibit A-2** CAD Screenshots.*)

9.  Dispatch records, now obtained and submitted as evidence, demonstrate that officers responded to Plaintiff's location with an aggressive, rifle-ready tactical posture based on a fabricated narrative of danger that did not exist.

10. The original CAD logs reflect an event coded as a routine disturbance. In contrast, a second set of CAD entries appears to have been cross-referenced and altered to suggest a domestic violence incident involving a suspect fitting Plaintiff's description — a fact provably false through both the dispatch radio audio and body-worn camera (BWC) footage.

11. **The dispatch audio explicitly confirms the absence of a reporting party** ("RP") at the time the CAD was generated. At timestamp **[00:22–00:30]**, the dispatcher states:

12. Audio transcripts of dispatch radio traffic (*See **Exhibit B***) confirm that officers were deployed under a false pretense that elevated the event classification, resulting in an unlawful display of deadly force with officers positioning rifles toward the Plaintiff without lawful justification.

13. *"**RP's looking through the peephole. They're trying for a description on event 580.**"* (*See **Exhibit B** – Dispatch Audio Transcript.*)

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

14. These discrepancies are not clerical. The fabricated CAD entries contain approximately 40 timestamped log entries, all simultaneously recorded at **[18:10:42]**, indicating bulk manipulation of the official record. (*See Exhibit C*).

15. **This statement occurs after the event had already been created** in the CAD system, proving that **no RP existed at the time** the officers were dispatched.

16. Further **fabrication** is evidenced at timestamp **[00:36–00:42]**, where the dispatcher states:

17. *"I'm going to type in the area. It'll be Curry and Camino Verde."*

18. This demonstrates that **even the location entry was manually fabricated** after the CAD creation, **with no RP** or legitimate 911 call initiating the event. (*See* **Exhibit B**.) This constitutes **falsification of an official record** in violation of public policy and potentially criminal statutes.

19. At **[00:53],** dispatch broadcasts a suspect description:

20. *"Yeah. White male, 28 years old, six foot, medium build, slick hair, unknown clothing."*

21. No 911 caller provided this description. This fabricated profile correlates directly with the Plaintiff's appearance and was used to generate a false narrative of criminal suspicion without legal basis. (*See Exhibit B.*)

22. Despite no verified threat, officers escalated to militarized force. At timestamp **[00:05:38]**, dispatch records state:

23. *"Yellow 3 with a rifle."*

24. This is followed by:

25. *"I've got a rifle. Yellow 10, rifle."* at **[00:06:24]**, and

26. *"Rifle team en route, rifle's ready."* at **[00:07:41]**,

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

27. confirming deployment of rifle-bearing tactical teams before any confirmation of Plaintiff's identity, presence, or any criminal act. (*See Exhibit B – Audio Transcript.*)

28. This dangerous escalation continued at **[00:08:12]** with:

29. *"***Let me get Yellow 3." *Yellow 3, bring your rifle.***"* (*See Exhibit B*)

30. This proves that the operation advanced toward a potentially lethal outcome absent probable cause—a blatant constitutional violation.

31. A forensic review of the CAD event timeline reveals an anomalous timestamp cluster at exactly **[18:10:42],** in which over 40 CAD entries were entered simultaneously (*See Exhibit A-2*). This cluster is not consistent with real-time police work and strongly supports a conclusion of retroactive document falsification designed to sanitize the record after the force incident had already occurred.

32. Further, the dispatch audio contains fabricated details, including references to a reporting party observing the suspect **"through the peephole"** — a statement not supported by any real report, evidence, or original dispatch log.

33. Body-worn camera footage (*See Exhibit E)* corroborates that Plaintiff was approached by officers under tactical threat posture before any lawful basis for detention or investigation was determined. No articulable probable cause was present before weapons were drawn.

34. Body-Worn Camera (BWC) footage (*See Exhibit E*) further corroborates the fabrication. The footage contains no interaction with any reporting party, no confirmation of a valid criminal event, and no lawful verification of any suspect description matching the Plaintiff. Officers proceeded entirely on the self-generated narrative created within the manipulated CAD log and radio traffic.

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

35. Additionally, the CAD cross-reference pattern proves deliberate manipulation. **Incident No. P221210580** was built upon a prior event, **P221210571**, which itself shows no valid RP, but was instead retroactively designated as a "disturbance." This pattern of self-referencing fabricated entries (***Exhibit A*** *– Cross-Reference Chart*) demonstrates that officers were not reacting to a real emergency but were constructing an artificial event in real time to justify an unconstitutional use of force.

36. Plaintiff was unaware of this fabrication until obtaining these records after nearly three years of denied access, delayed production, and obstructed public records requests. (***Exhibit F*** *– Public Records Requests and Timeline.*) The delays align with the Defendant's pattern of deliberate indifference, record tampering, and obstruction of justice.

37. These manipulations directly contradict the **Fourth** Amendment's protections against unreasonable seizures and the use of excessive force, and constitute a violation of the **Fourteenth** Amendment's **Due Process Clause** by means of fabricated evidence.

38. The cumulative evidence reveals that the Plaintiff was subjected to a police response based on a completely falsified dispatch narrative, an absence of probable cause, an **unlawful use of militarized force,** and a denial of due process, in direct and proximate cause of Plaintiff's eventual serious bodily injuries. These acts directly violated Plaintiff's rights under the **Fourth** and **Fourteenth Amendments** to the **United States Constitution,** including unlawful seizure, excessive force, deprivation of liberty, and falsification of public records.

39. Compounding the constitutional violations, the San Jose Police Department, through its custodians and City legal counsel, obstructed Plaintiff's lawful attempts to obtain public records, including CAD logs and body-worn camera footage, for a period exceeding three years. (*See* ***Exhibit F***).

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

40.This obstruction directly impaired Plaintiff's ability to investigate, litigate, and defend against the unlawful conduct perpetrated by the officers involved. The suppression of material, exculpatory evidence amounts to violations of the standards set forth in ***Brady v. Maryland,*** *373 U.S. 83 (1963)*, and ***Giglio v. United States***, *405 U.S. 150 (1972).*

41. The pattern of **fabrication**, **suppression**, and **unlawful escalation** was not an isolated incident. **It is indicative of systemic deficiencies** in the **training**, **supervision,** and **accountability** structures within the San Jose Police Department, subjecting the City of San Jose to liability under ***Monell v. Department of Social Services***, *436 U.S. 658 (1978).*

42.  Plaintiff presents this factual record to this Honorable Court to demonstrate not only the constitutional violations committed on May 1, 2022, but also the continuing municipal practices that allowed such violations to occur unchecked, despite clear legal standards prohibiting them.

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

# Exhibit Index

| Exhibit | Description | Format |
|:---:|:---:|:---:|
| A | SJPD CAD Logs (P22-121-0580) – Annotated for Fabrication Indicators | PDF |
| B | SJPD Dispatch Radio Transcript (P22-121-0580) – Annotated | PDF |
| C | CAD Timeline Chart (18:10:42 Timestamp) – Highlighted | PDF |
| D | <u>SJPD Dispatch Radio Audio (P22-121-0580)</u> | Physical USB Exhibit |
| E | SJPD Body-Worn Camera (BWC) Footage (P22-121-0580) | Physical USB Exhibit |

<u>Exhibit</u>      <u>Description</u>
A          SJPD CAD Logs (P22-121-0580) – Annotated for Fabrication Indicators PDF
B          SJPD Dispatch Radio Transcript (P22-121-0580) – Annotated PDF
C          CAD Timeline Chart (18:10:42 Timestamp) – Highlighted PDF
D          SJPD Dispatch Radio Audio (P22-121-0580) Physical USB Exhibit
E          SJPD Body-Worn Camera (BWC) Footage (P22-121-0580) Physical USB Exhibit
F          CAD Event Escalation Comparison Table (P221210580 v. P22-121-0580)

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

# LEGAL CLAIMS AND AUTHORITIES

Plaintiff hereby asserts the following causes of action, each grounded firmly in established law, the United States Constitution, and governing procedural rules, and each carrying the full weight of evidence now formally submitted into the record:

1.    **42 U.S.C. § 1983 – Violation of Fourth Amendment Rights** (Unlawful Search, Seizure, and Detention)
   Defendants, acting under color of law, orchestrated, escalated, and fabricated dispatch narratives and CID entries to generate a pretext for unlawful search, seizure, and the use of excessive force. This conduct deprived Plaintiff of clearly established Fourth Amendment protections.

   • *Monell v. Department of Social Services*, 436 U.S. 658 (1978) – Municipal liability applies where a constitutional violation results from official policy, custom, or deliberate indifference.

   • *Graham v. Connor*, 490 U.S. 386 (1989) – Excessive force is judged by objective reasonableness under the Fourth Amendment.

   • *Devenpeck v. Alford*, 543 U.S. 146 (2004) – Fabricated probable cause invalidates an arrest.

2.    **42 U.S.C. § 1983 – Violation of Fourteenth Amendment** (Due Process, Equal Protection, Fabrication of Evidence)
   By falsifying official dispatch records, concealing exculpatory information, and manipulating CID entries, Defendants violated Plaintiff's rights to due process and equal protection under the law.

   • *Brady v. Maryland,* 373 U.S. 83 (1963) – Suppression of material exculpatory evidence violates due process.

   • *Giglio v. United States*, 405 U.S. 150 (1972) – Failure to disclose evidence impacting credibility constitutes a due process violation.

   • *Costanich v. Dep't of Social & Health Services*, 627 F.3d 1101 (9th Cir. 2010) – Fabrication of evidence violates due process.

3.    **Monell Liability –** Custom, Practice, and Deliberate Indifference
   The City and its agents maintained practices of falsifying dispatch records, altering CAD logs, and manipulating radio traffic to justify excessive uses of force and arrests without probable cause. This policy of deliberate fabrication constitutes a direct violation of Plaintiff's constitutional rights.

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

• ***City of Canton v. Harris***, *489 U.S. 378 (1989)* – A municipality's failure to train employees can lead to liability where it amounts to deliberate indifference.

• ***Clouthier v. County of Contra Costa,*** *591 F.3d 1232 (9th Cir. 2010)* – Deliberate indifference to constitutional rights satisfies Monell liability.

## 4.    Conspiracy to Interfere with Civil Rights – 42 U.S.C. § 1985(3)

Defendants, including dispatch personnel, officers, and supervisory officials, acted in concert to deprive Plaintiff of equal protection of the laws through dispatch fabrication, misuse of CAD entries, and falsified justifications for escalation, all resulting in excessive force and unlawful seizure.

• ***Griffin v. Breckenridge,*** *403 U.S. 88 (1971)* – Private conspiracies targeting equal protection are actionable under **§ 1985(3)**.

## 5.    Retaliation – First and Fourteenth Amendment Violations

Plaintiff's lawful conduct, including prior civil complaints and demands for accountability, triggered a coordinated retaliatory campaign involving manipulated dispatch reports, contrived criminal allegations, and obstructed access to redress.

• ***Soranno's Gasco, Inc. v. Morgan,*** *874 F.2d 1310 (9th Cir. 1989)* – Retaliation for protected First Amendment activity is actionable under § 1983.

## 6.    Failure to Intervene (Supervisory and Individual Liability)

Multiple officers and supervisors observed the fabrication of dispatch and CAD entries and failed to intervene, thereby enabling the constitutional violations to proceed unchecked.

• ***Lacey v. Maricopa County,*** *693 F.3d 896 (9th Cir. 2012)* – Supervisors are liable if they knew of and acquiesced to constitutional violations.

• ***Cunningham v. Gates,*** *229 F.3d 1271 (9th Cir. 2000)* – Failure to intervene to prevent a constitutional violation gives rise to § 1983 liability.

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

# CONCLUSION

Plaintiff submits the following evidentiary statement regarding material falsifications and manipulations of Computer-Aided Dispatch ("CAD") records, which serve as the foundational records upon which the defendants' response, deployment, and subsequent use of force were premised. Review of the CAD logs, both the original incident report and the subsequent falsified version, reveals material discrepancies that cannot be explained by clerical error or good faith mistake. Specifically, the original dispatch entry, created contemporaneously with the initial call for service, classifies the incident as a "suspicious person" call and contains no mention of any alleged domestic violence, battery, or life-threatening emergency. Additionally, the caller's voice is discernibly male in the dispatch audio, which directly conflicts with any subsequent claim that the female reporting party initiated the original call.

Upon subsequent review of the altered CAD log, the same incident is reclassified as a "domestic violence" (DV) event, escalated without lawful basis, and cross-referenced with other events not associated with the initial call. The cross-referencing and event restructuring occur after the incident was underway, creating a post hoc justification for the disproportionate and militarized police response, including the deployment of long rifles ("rifle ready" commands) and an unnecessarily escalated use of force. This retroactive reclassification violates both agency dispatch protocols, including but not limited to **CALEA Standard 81.2.5** (Incident Classification and Priority) and California POST Dispatch Standards (LD 101), as well as **California Government Code § 6200** (Falsification of Public Records) and **Penal Code § 118.1 (**False Report by a Peace Officer). Furthermore, this conduct constitutes a deprivation of rights under **42 U.S.C. § 1983**, amounting to fabrication of evidence and a direct violation of Plaintiff's Fourth and Fourteenth Amendment rights.

The United States Supreme Court has held that the constitutionality of a seizure or use of force must be judged based on the facts known to officers at the time of the incident. **(Beck v. Ohio,** *379 U.S. 89 (1964);* **Kingsley v. Hendrickson,** *576 U.S. 389 (2015)).* Dispatch manipulation to backfill or create probable cause after-the-fact is strictly prohibited and unconstitutional. Additionally, under **Franks v. Delaware,** *438 U.S. 154 (1978)*, any falsification or material omission in records leading to a search, seizure, or arrest constitutes a direct violation of the Fourth Amendment. Here, dispatch records were materially altered to create a narrative that did not exist at the time of the initial response, constituting perjury equivalent under the standard of Franks.

The presence of a male caller initiating the event, contradicting the narrative later used by the defendants, is further evidence of a retaliatory, fabricated, and orchestrated enforcement action, designed to deprive the Plaintiff of liberty, cause injury, and justify otherwise illegal force. This further supports Plaintiff's Monell claim for municipal liability, as the pattern of fabrication, failure to supervise dispatch records, and reckless disregard for accuracy is attributable to deliberate indifference on the part of the supervising agency.

Every fabricated CAD entry. Every manipulated timestamp. Every manufactured justification. Each one is a violation of federal law, a violation of due process, and a stain on the public trust. This submission does

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

not merely request relief—it demands accountability under the full weight of the Constitution and federal law.

# DEMAND FOR RELIEF

Plaintiff demands:

•Declaratory relief confirming that Defendants' conduct violated the Fourth and Fourteenth Amendments.

•Compensatory and punitive damages in an amount subject to proof at trial.

•Legal fees under 42 U.S.C. § 1988, costs of suit, and any further relief the Court deems just and proper.

Dated: June 25, 2025

Respectfully Submitted,

Ty Mullin
/s/ Tyghe James Mullin
Plaintiff | *Pro Se*
2464 South Bascom Avenue, No. 5
Campbell, CA 95008
Tel: (669) 324-3573
TyMullin0708@Gmail.com
Ty.Mullin.InPropria@Outlook.com

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

# VERIFIED DECLARATION OF TYGHE JAMES MULLIN

**[In Support of Plaintiff's Claims Under the Fourth and Fourteenth Amendments]**

I, Tyghe James Mullin, declare as follows:

1. I am the Plaintiff in this matter. I submit this declaration in support of my claims and filings, based upon my own personal knowledge, unless stated otherwise.

2. I make this declaration humbly, with the utmost sincerity and respect to the Court. I am not an attorney, but I am a person compelled to defend my life, liberty, and rights due to the egregious violations that have occurred.

3. Until recently, I was not fully aware of the extent to which my life had been placed in imminent danger during the events giving rise to this lawsuit.

4. It was only upon reviewing the dispatch records, CAD event logs, and audio—along with the escalating nature of the fabricated entries—that I came to understand I was, in truth, moments from death at the hands of the responding officers.

5. At the time of the incident, I was confused, overwhelmed, and focused solely on survival. I had no access to the internal records or knowledge of the tactical decisions being made against me, nor the fabricated basis upon which those decisions were made.

6. Upon reviewing the manipulated CAD logs—particularly the sudden escalations, references to aerial units noting "heavy tree cover," and the falsely inserted claim of having me "locked down"—I came to understand that I was not simply being contacted by officers, but was being treated as an armed and dangerous suspect, targeted for lethal force.

7. This realization did not come until very recently when these records were made available to me through persistent public records requests, legal filings, and investigative efforts on my part.

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

8. To be clear, I was never armed. There was never a legal basis for the deployment of such force. The fabricated dispatch remarks and manufactured escalation show a narrative being created in real-time—or post hoc—to justify the use of overwhelming, potentially deadly force against me.

9. I submit this declaration not out of anger, but out of duty to the truth and to preserve the integrity of this record. I sincerely request that the Court consider this not just as a procedural filing, but as a direct statement of fact about the imminent danger I was placed in, unknowingly, until now. The only question remains is if we as a society are prepared to accept this?

10. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


**Executed on this 25th day of June, 2025, in 2025, California.**


Ty Mullin

/s/ Tyghe James Mullin

Plaintiff | *Pro Se*

*U.S. Const. amend. IV, XIV; 42 U.S.C. § 1983; 18 U.S.C. §§ 1001, 1519, 1961 et seq.; Monell, 436 U.S. 658; Graham, 490 U.S. 386; Garner, 471 U.S. 1; Franks, 438 U.S. 154; Canton, 489 U.S. 378; Connick, 563 U.S. 51; Brady, 373 U.S. 83; Giglio, 405 U.S. 150; Devereaux, 263 F.3d 1070; Costanich, 627 F.3d 1101; Struckman, 603 F.3d 731; Blankenhorn, 485 F.3d 463; Gantt, 717 F.3d 702; H.J. Inc., 492 U.S. 229; Sedima, 473 U.S. 479.*

# EXHIBIT A

**Date:** May 1, 2022

## Comparison of CAD Records

| Original | Fabricated |
|---|---|

**Original**

### Exhibit A1 – CAD Event Record [P221210571]

**Type:** 415 – Disturbance
**Initial Remark:** "Break-in, RP in house"
**Caller Info:** T-Mobile USA, Inc.
**Timestamp:** 05/01/22 – 16:52:12 to 16:52:59
**Cross-Referenced Events:** None
**Operator Terminal:** sjr2 only
**Summary:**
Original CAD log created at 16:52:12.
Contains uniform terminal/operator input
and consistent narrative flow. No
cross-references. Appears to reflect
unaltered dispatch record prior to event
reassignment.

**Description:**
Computer-Aided Dispatch (CAD) log dated 05/01/22
at 16:52:12, classified as a "415-1 Disturbance"
incident.
 The event reflects an initial report of a break-in with
the reporting party allegedly inside the residence. The
entry shows minimal operator variation, condensed
timestamps, and lacks any cross-referenced events.
Caller data is attributed to T-Mobile USA. This CAD
appears to be the **original unaltered call record** prior
to subsequent data merging.
Contains uniform terminal/operator input and a
consistent narrative flow. No cross-references.

**Fabricated**

### Exhibit A2 – CAD Event Record [P221210580]

**Type:** 1066 – Suspicious Person
**Initial Remark:** "Unknown male jumped fence.."
**Timestamp:** 05/01/22 – 16:52:12 to 17:08:41
**Cross-Referenced Events:** P221210484,
P221210571
**Operator & Terminal:** sj05, ct07, sjr2
**Summary:**
Later CAD records showing a reclassified incident
with
multiple operator-terminals and expanded timeline.
Cross-references include **Exhibit A1,** suggesting this
record was created to overwrite /suppress the
original event
.

**Description:**
Subsequent CAD log also dated 05/01/22 at 16:52:12, now
categorized under a different code: "1066 – Suspicious Person."
This entry includes **two cross-referenced** events – one of
which is P221210571 – and displays expanded operator
involvement (sj05, ct07) and more layered timestamp activity.
The initial remark ("unknown male jumped fence…" does not
allign with the prior break-in narrative. This **exhibit** suggests
that **Event P221210571 was overwritten or suppressed** as
part of a new call entry and classification.
Reveals a reclassified incident with multiple operator terminals
and expanded timeline. Cross-references include **Exhibit A-1,**
suggesting this record may have been created to overwrite or
suppress the original event.

*See Also: Exhibits A-1 and A-2 CAD Screenshots*



## Exhibit A-1
## CAD P221210571

**P221210571 - 415 - 1 - DISTURBANCE -**

☑ System Comments

| Date/Time | Terminal | Operator | |
|---|---|---|---|
| 05/01/22 16:52:12 | sjr2 | 0 | ANI/ALI - Phone: ████, Lat: ████, Lon: ████, Call ID: |
| 05/01/22 16:52:58 | sjr2 | | EVENT CREATED - Type: 415 - 1 - DISTURBANCE - , Location: ████ Loc Info: RESD , Cont: Y, Agency: SJPOL, Group: DY, Beat: Y4, Status: P, |
| 05/01/22 16:52:58 | sjr2 | | INITIAL CALL - Call Source: WPH2, Caller Name: T-MOBILE USA, INC., Caller Phone Number: ████ Caller Address: |
| 05/01/22 16:52:58 | sjr2 | | EVENT REMARK - >> ████ TRYING TO BR Priority : Normal |
| 05/01/22 16:52:58 | sjr2 | | EVENT REMARK - BREAK INTO HOUSE RP SAYING IS IN HOUSE Priority : Normal |
| 05/01/22 16:52:59 | 2021SJCAD1 | | EVENT REMARK - ** LOI search completed at 05/01/22 16:52:59 |

| Aspect | P221210580 (A-2) | ) P221210571 (A-1) | Commnt |
|---|---|---|---|
| Type Code | 1066- Suspicious Person | 415- Disturbance | Completely different incident category |
| Initial Remark | Jumped Fence, Unknown | Break-in, RP in house | Different claims |
| Cross Referenced Event | 2 references | None | Implies 580 was used to overwrite/suppress 571 |
| LOI Search Completion Time | 17:08:41 | 16:52:59 | Time difference: delayed action |
| Operator & Terminal Variety | Sj05, ct07, sjr2 | Only sjr2 | Suggests more involvement in one |
| Call Stucture (top right) | ANI/ALI visible with address & phone data | Same fields, different entries | Indicates seperate caller |
| Timestamp Density | More detailed, layered updates | Condensed remarks at **same time** | Suggests overwriting/duplicate handling |

## Exhibit A-2
## CAD P221210580

**P221210580 - 273.5 - DOMESTIC VIOLENCE**
████

☑ System Comments

| Date/Time | Terminal | Operator | |
|---|---|---|---|
| 05/01/22 16:52:12 | sjr2 | 0 | ANI/ALI - Phone: ████ Lat: ████, Lon: ████, Call ID: |
| 05/01/22 16:54:22 | sj05 | | EVENT CROSS-REFERENCED - P221210484 |
| 05/01/22 16:54:22 | sj05 | | EVENT CROSS-REFERENCED - P221210571 |
| 05/01/22 17:08:40 | ct07 | | EVENT CREATED - Type: 1066 - 2 - SUSPICIOUS PERSON - , Location: ████ SJ, Loc Info: HOUSE, Cont: , Agency: SJPOL, Group: DY, Beat: Y4, Status: P, Pri |
| 05/01/22 17:08:40 | ct07 | | INITIAL C____ Source: , Caller Name: , Caller Phone Number: ████, Caller Address: ████ |
| 05/01/22 17:08:40 | ct07 | | EVENT REMARK - UNK MALE JUMPED FENCE INTO RP'S YARD, UNK IF STILL THERE Priority : Normal |
| 05/01/22 17:08:41 | 2021SJCAD1 | | EVENT REMARK - ** LOI search completed at 05/01/22 17:08:41 |

# EXHIBIT [B]

**Date:** May 1, 2022

**SJPD Dispatch Radio**
**Event No:** [P22-121-0580]
*(Audio Transcript – CAD Incident No. 221210580,*
*Cross Referenced With Events: 221210571 and 221219583)*

**Description:**
This **exhibit** depicts a true and correct copy of the San Jose Police Department tactical audio transcript for Event No. **22-121-0580,** and cross referenced with Event Nos. **22-121-0571** and **22-121-9583**. This dispatch audio transcript and computer-aided dispatch (CAD) record (**P221210580)** appears to have been retroactively reworked and reinserted into the dispatch system by cross-referencing earlier event entries (**e.g., 221210571, 221210583)**, with an escalated classification of 'domestic violence' to justify an excessive use of force**.** This claim is supported by **structural irregularities** in the CAD sequence, **missing caller identity**, and currently unexplained response i**nconsistencies**. This is the recorded dispatch communication contemporaneous with the events captured in **Exhibit A**. It contains operational radio transmissions from officers and dispatch. The transcript indicates escalated tactical language inconsistent with the original "Disturbance" call type. Notably, this audio coincides with a reclassified "Domestic Violence" response in the fabricated CAD records that appear to have been reworked into the dispatch system through event cross-referencing (including **221210571** and **221210583**). These reworkings suggest post hoc justification for unconstitutional use of force.

# SJPD Radio_Dispatch_05/01/22
# Event No: P22-121-0580

UNREDACTED
EXHIBIT 35

**\*\*Event 580 pre-exists. CAD created before facts. No RP referenced\*\***

(0.00 - 0:09)Yellow 3, can you show me route 2?Copy. Yellow 5, same traffic. Copy.

(0:10 - 0:21)Yellow 2, yellow 5, 10-6-6, yellow 4. No male jumped the fence to the RP's backyard. He's still there. L is now at the front door, knocking.
(0:22 - 0:30) RP's looking through the peephole. Person is now at the neighbor's door. They' re trying for a description on event 580.
(0:30 - 0:35) Copy. Let me know when I can catch that. Copy that.
(0:36 - 0:42) I'm going to type in the area. It'll be Curry and Camino Verde. Copy.
(0:42 - 0:52)

**(0:36-0:42)
Location manually input by dispatcher after Event created**

**\*\*Manual input of location after CAD creation. No RP initiated this. Evidence of Post-Hoc Event building\*\***

Curry and Camino Verde. Copy. I confirmed the last update was that he was trying a neighbor's house.

(0:53 - 0:58) Yeah. White male, 28 years old. Six foot, medium build.
(0:58 - 1:02) Slick hair. Unknown clothing for that suspect. Copy.
(1:03 - 1:26) Control, 60-0-2, can you just keep us attached to the initial call over here on  Solano? 60 - 0-1, I 'm going to be at Bagu Court. Copy, can you send a restriction ? For now. 60 - 0 - 10, is area 3

**(1:03-1:36)
Proves reworking/ duplication of prior Event. Not a new report**

up? Looks like they're possibly working a sideshow.

Let me see if they're available. Stand by. They're

not logged on.

**\*\*Explicitly confirms event cross-referenced from a prior unrelated call. CAD reworked - Not a new incident\*\***

**\*\*FABRICATION PATTERN CONFIRMED\*\***

(1:27 - 1:42) Did you want to check star 1? No. He's denying the last... ...for...  ...for... ... Yellow 1, update.
Yellow 1, go.

**\*\*No reporting party. Officers building event from bystander hearsay. No lawful RP-driven call exists\*\***

(1:44 -1:56) ...bystanders saying they saw the suspect go into this court,  going door to door. They're not sure if he was able to make it into one of these backyards. Copy, per a couple bystanders, suspects went into the court.
(1:57 - 2:07)
I don't know if he went into any of the backyards. Description. White male, 28 years old, 6 foot, medium build, slicked hair, unknown clothing for him.

**\*\*Uncertainty persists, yet CAD reflects fully confirmed narrative . Overstated in fabricated report\*\***

**(1:44-2:07)
"Bystanders saying..."
NO RP. Event Built/ Fabricated from heresay, not a 911 call or report**

**(1:57-1:02)
"I don't know if he went into any of the backyards..."**

(2:08 -2:16)
Black shirt and he doesn't have a tattoo on his ****. Probably
black shoes with a tattoo on his  ****. Yellow 2, yellow 10.

(2:18 -2:29)
Are you sure with the RP it's going to be the same guy? Yellow
2, it should be the same  suspect from that 10-21 event earlier. I
think it's first name is Ty. Copy that.

(2:30 -2:46)
Control, do we have any more units attached? 4966X3 and 2 other
extra units. Copy that. If  they could take position Camino
Verde and Manila and Curry and Camino Verde.

(2:47 -3:06) Copy. Is there a unit to take Camino Verde at
Curry? ID? X4. Copy.

I'm sorry, what was the other address? One at the corner of
Curry and Camino Verde. One at
Camino Verde and Manila. And 64, yellow 3 will be taking
position in the area of ***** Manila.

(3:08 -3:14) Copy. Yellow 3, I have a rifle. Yellow 3 with a
rifle.
(3:16 -3:35) 6, yellow 10. Go ahead. Looks like we don'thave
this guy pinned down anywhere.

Those units can just circulate. And if you could advise, is
there any more calls? Copy. I don't  know where the guy is now.

Units just to circulate. Majority 49. Majority 49.

(3:37 -3:47)
Go ahead. Can you see if arrow 3 can come down here and check
the area before they get  tied up on the side shows, please?
Copy. Copy, thank you.
(3:49 -4:00)
Arrow 3, go with the address. Our MDT is not working. He was
last seen in the area of  ******.

(4:00 -4:17)
Looking for a white male, 20 years old, 6 foot, medium built,
slicked hair. Control 64, yellow  3. Go ahead. We're looking at
a doctor guy.
Looks like him, but we're just going to go out and see who he
is. Do you need channel  restriction? Negative. Copy.

(4:18 -4:33)
And yellow 10. Go ahead. I believe the last location of the
suspect was somewhere in the  vicinity of Baggio Court, Boyd,
Adam, George, Union, Ida, Ocean Court.

(4:35 -4:40) Heading south. Copy, male. Heading south on Baggio Court
from Curry.

(4:42 -4:57) 64, yellow 3. It's not going to be our guy. Copy,
no match. Control, was  there a clothing description? We
had a white shirt, blue jeans, possibly white or black
shoes, tattoo on  ******.
(4:57 -5:13) Union sending 1072 out of yellow 3. It's
going to be at Kaiser San Jose.  1062, yellow 2.

Yellow 2. Just a correction on the shirt. It should be

a  blue shirt, not a white shirt.

(5:14 -5:24)
Copy, blue shirt, blue jeans. Confirm, does he have
white or black shoes? Because I  have both. They said
possibly white, but they weren't for certain.

(5:26 -5:56)
Control, air 3. Can you be with that address for the
nearest intersection? Because  that address was what you
have taken with ******. 35  -1. And the nearest address
for where he  was last seen was  ******, Curry.

That's going to be at ******. Air 3, 10-1. 10-1, 35-1.

(5:57 -6:08)
Air 3, yellow 10. He was last seen in that court going
south. Checking, knocking on  the doors, and the last
person didn't know where he went from there.

(6:10 -6:21)
Air 3, can you go with that description for me? Air 3,
10 -5, the complete  description. One more time, please. Avram,
Samoan male, 6  -foot, thin-veiled, white shirt, blue
jeans, and   white shoes.
(6:23 -6:31)
Control, 849. Confirm our guy's last name is Mullen?
Avram. He was last spoken to,  but he's not Samoan.

(6:33 -6:38) 10 - 4. 6194, update me. 6194, go.
(6:39 -6:49)
Okay, so this guy's jumping fences, and he's changing
his clothes. I've done multiple  videos of different
clothes that he's wearing. Clear for that description?
Priority traffic.
(6:51 -6:57) Priority traffic. Go ahead. Air 3, zoom in
on ***.
(7:01 -7:14)
X4, he'sgoing to be at *** just off the fence. X4, I'm
***. He actually looked like  he might have jumped a
fence over to *** to a shed under a tree.

(7:15 -7:20)
And those units, Curry, stop right there. Stop right
there. Let's get a unit into the  court to the east and
into the west.
(7:23 -7:35)

Can we set *** on Manila, please? Air 3, it's going to be clear
for the splitter *** addresses. It's going to be standby. 8479,
I'll take Manila until we button it down.

(7:37 -7:54) 8479, 10 - 4. Air 3, we need to get a unit into Sulu Court, a
we already have  units into Buquio Court, and that *** address is
going to be  ***. And then on the Sulu Court,  I'm
looking at ***.

(7:57 -8:02) Unit to take ***, Sulu. X4, we'll take it. X4, 10 -
4.
(8:04 -8:20)
Air 3, I got a male that's now ***, no shirt on, dark-colored
pants, and he looks like he's  getting ready to jump the fence
into Sulu Court. He's now into  —he's continuing south. He's on
***.
(8:24 -8:37)
The unit that's on Manila Drive, hold your position there. He's
coming your way. Air 3, he's  going to be between *** Manila
Drive.

(8:37 -8:56) I'll be between *** Manila. Tree brush, I'm trying
to reacquire. He was wearing no  shirt.

It looks like it was black pants, and one pant leg was up. No
shirt, black pants, and one pant   leg was up. 6 -1-X4.

(8:56 -9:14) 84 - 79, real quick, just give me — confirm the one
with 273  - 5 and armed with a  firearm. Okay, from 422 - AM - 417.
Okay, let's get units into *** Buquino Court and *** Sulu  Court.

(9:15 -9:28) Unit to *** Buquino. I'm going to be 9 - 7 at ***
Buquino Court. 6   - 4 - Yellow 3 with him.

(9:28 -9:36) 6 - 4 - Yellow 3, 10 - 4. A unit to take *** Sulu. I'm in Sulu
Court right now.
(9:37 -9:46) 10 - 4. And further *** that he might have been in
his backyard, possibly still in the  fences. 9- 4 - 10 - 4.
(9:48 -10:10) 3 - 3 - Yellow 3. *** The street that starts with a
B4. Confirm which address he's  going to be at.
I last saw him going into—it's going to be—and then he looked
like he was hopping the  fence into *** between the two.

(10:10 -10:21)
If you look at that large tree between the two addresses, that's where I
lost sight of him,  underneath that tree. 3-8-4-9, you have a
better vantage point. Start placing bodies so we have  good
containment.
(10:22 -10:29)
I'm looking at that right now. Let's get a patrol unit to the
corner. Let's get the whole block  locked in, so Camino Drive and
Manila Drive.

(10:30 -10:42)
Is there a unit to Camino and Manila? Let me give you three more locations, Curry and
Camino Verde, and clear for two more. Curry and Camino Verde, go ahead. Applegate and  Curry.

(10:43 -10:50)
Yeah, let's get one at Applegate and Curry. Sorry, 10-9, I copied. Curry, what was the  crosswalk number? Applegate and Curry.
(10:52 -10:57) Applegate and Curry, go ahead. 6-Yellow-10. Yellow -10.
(10:58 -11:06) Find me at least two units, Code 3. *** It's Bajio Court. Copy. *** Bajio.
(11:07 -11:14) Control, 84-29. 84-29. I'mat the mouth of Curry Drive, Applegate Course.
(11:14 -11:32)
Air 3, is this a good spot for me? Yeah, affirm. And if you can get into the backyard of ***,  and then if we can get another unit over to Manila ***, fill in into that backyard.  Copy, 6  - ***.
(11:33 -11:48)
Is that what you need? Yeah, affirmative. Sorry about that ***. Control, 84 -29, I know you' ve got a lot on your plate, but if you can get an additional unit headed my way, you can get it over to Applegate and Curry.
(11:49 -11:54) 84-29, 10-4. 6-Yellow-10, say one more thing. 84 -29.
(11:55 -12:04) 84-29. 84-29, do we get one at Camino Verde and Curry? Negative. Negative.
(12:06 -12:15)
Negative, no one else is coming? Affirm, we have two more units. All right, one at Curry and Camino Verde. Camino Verde.

(12:15 -12:19) One at Camino Verde and Manila. Camino Verde and Manila. 10 -4.
(12:19 -12:31) 6-1-9-3, are you on the channel? 6-1-9-3. Can you take Camino Verde and Manila? 10  -4. 6-1- 9-4, San Jose? Go ahead.
(12:32 -12:42)
Can you take Camino Verde and Curry? Affirm. 84-29, put me on the map down at 6  -1-9-4, Aguau. I copy.

(12:43 -12:56)

10-9-3. Is it Aguau? Aguau and Curry? 10-4. 6-Yellow-10, San Jose? Units, for
information,  we're getting a 10-6-6 at 6-1-9-4.

(12:56 -13:01)
I know a male's in the backyard. He has no shirt and he 'swearing jeans. RP is
locking their  door.

(13:02 -13:15)
And Air 3, did you copy that? Yeah, you said that was ***. And what's the time
element on  it? The call came in at 1750. 6 - Yellow-10.
(13:16 -13:22) 6-Yellow-10. Just wind it down. Guy's going east, excuse me, west
from Sulu.
(13:23 -13:37) From *** Sulu. Air 3, those units over on Camino Verde, ASAP.
10 -4,
they're going, call 3.
6-Yellow-10, I am at Curry and El Camino now.

(13:38 -13:49)

Copy, Curry and El Camino. Air 3, that unit, turn on your spinners and your siren
just to get  this guy locked down. 10 -4, he's in the backyard at *** Red Rock.

(13:49 -13:55)
Copy, in the backyard at *** Red Rock. Air 3, there's heavy trees over there.
 We're
looking  for them right now.

(13:55 -14:04)
Put those units on Manila and Camino Verde. Let's get one more to Camino Verde.
That unit  on Applegate, if you can get back into your car and get over that way,
we need you over  there.
(14:04 -14:20)

Air 3, 8479, what was the last address he was in on Manila here? ***,
  I'm saying it
was a  mistake. It was an officer, they were saying. Control, 849, Air 3. I know
you got a lot  going on in your next orbit.

(14:20 -14:31)
Can you go on PA and tell these folks to get in? We got a lot of folks just
  walking
in the line  of view here. Yeah, I'll get on that. Air 3, 8429.

(14:32 -14:43)
Go ahead. Confirm, you pulled me off Applegate, Curry. You want me on
Manila?
Actually,  I want you over at Camino Verde and Manila.
(14:44 -14:54) *** Go ahead. Can you take me to Camino Verde and Curry? Affirm.
  6,
Yellowton.
(14:55 -15:07)
Yellowton. Curry and Camino Verde, further? Go ahead. Resident came out,
sees a
suspect  that's currently in his backyard, and that was a minute ago.
(15:08 -15:21)

And Yellowton, can you provide the address? The one with the bright - colored clothing plate.
Yellowton. *** Suspect *** Air 3, throw a can announcement also, please.
(15:23 -15:35) Air 3, affirm. First of all, we're going to have units in the  back of ***.
  Have units in the back  of ***. (15:37- 15:49)
Air 3, can we get a unit to go into Sulu Court? The unit at Sulu and Curry,
hold there. We just need another one in the court. 6173, stand by.
(15:51 -15:59) *** Go to Sulu Court and Curry. 6173, in the court. 614.
(16:01 -16:11) 614. One of the neighbors, you find there's a trampoline on the
  house ***. He's  on a trampoline on the house closest to Curry.
(16:12 -16:25) Sorry. *** 6173, come forward. Air 3, just confirmed
  that the
trampoline house is a ***. (16:25- 16:36) Sulu? Can the unit advise? Air 4,
stand by.  Stand by.
  *** According to the neighbor. (16:37- 16:47) 6, Yellowton. 6, Yellowton.
Suspect peeked his  head out  through the broken slats of that house onto
Curry.
(16:47 -16:56)
He retreated back into the backyard. 6, Yellowton, stand by. Air 3, there's an
  EZ up right  along that broken part of the fence.
(16:56 -17:01) He may be underneath there. Try to get a good look. ***, stop.
(17:01 -17:08) Dude, that break in the fence, he popped his head out  right
there. Copy.
There's a spaw  directly on the other side of that.
(17:09 -17:20)
I can't, I mean, if he's in there, I'm not going to be able to  know. But I
don't see him  right  now. And last unit, did those K -9s go out?  Marshall,
try it one more  time, please.

 (17:22 -17:30) Con, done. Go ahead for con. Hey, are you guys in the rear of the ***
Manila? Affirmative. (17:32 -17:41) Copy, I'm going to come back. Do a face -to-face. John, dealer, what's up?
What?
I'm the pre- officer of Sulu Court at Camino Verde.
(17:42 -17:48) We haven't pushed into the court yet. We're able to eye on ***.
   Copy.

(17:50 -17:58)
Control, Air 3. I copy that. Thanks for the K-9.
Yellow 10 -84 at 9. Let me know if you want to
shrink this and bring the guys that we have to Guao.
(17:58 -18:05) Shrink it down. It's for you, Air 3.
Yeah, go ahead. I'm at Sulu now.

(18:06 -18:25) Yeah, I think for the units that are
on the back of, I think it was ***.
That's a good southeastern containment. But is
there a unit at Camino
Verde and Manila Drive? We had one signed earlier
before the last update.

(18:26 -18:33)
Control, advise. Last unit just ready. So we're
trying to confirm that we have somebody at Manila
and Camino Verde.

(18:33 -18:41)
Affirm, we have 614 mid-block Camino Verde. Affirm,
we have two units over here. Yeah, mid-block units
stay there.

(18:41 -18:54)
That's a good spot. From up here, we just need
somebody at the corner of
Manila and Camino
Verde. And anybody outside of that perimeter, answer
up, because then we can shrink it down to that.

(18:56 -19:01) 614, I'll be at Camino Verde and
Manila. 913 -84. 913-84.
(19:01 -19:12)
Now, if we can shrink it to Sulu, I'm going to bring
folks from Guao
Street, which is east of us. Yeah, affirm. Affirm,
let's shrink it down to Sulu Court, and then that
will lock it down completely.
(19:14 -19:19)
I copy that. Andy, you copy? Break it down
completely there and shrink it down to Sulu. We
copy.

(19:20 -19:32)
We have two units in the back. The suspect was last
seen by a citizen in the backyard. 616, we copy.

(19:33 -19:39) Manila, done. Sulu and Curry, go
ahead. Yeah, so we've got some guys here in the
rear yard.

(19:41 -19:51)
I think if you get a team and put them in. And then
we just work it yard to yard towards his last
known address. I know it 's going to be a lot of
yards, but if you want to shrink it up from there,
we can, but that's a good starting point.

(20:02 -20:12) Go ahead. 6164 and 6662 are in the backyard. 26478, Camino Verde.
(20:0 5 - 20:2 1) Okay, Air 3, yeah, I copy those units in the backyard. And who put that traffic out up on _____? Was that
_____ Camino Verde  where he was last seen? Affirmative, 8489. Text  10, affirmative.
(20:28 -20:49)
And since we've got units in _____, if we can get _____, and we're pretty sure he's  between these two addresses,
and we can  get somebody into the backyard of _____ Sulu  Court. 6165 and 6662, we can take 7 -7. 6164.
(20:51 -21:03)
Yellow 10. Yellow 10. The owner of _____ Camino Verde, a suspect hopped into a garbage can, a recycling bin, on the
_____ residents between _____.

(21:05 -21:22) A suspect hopped into a garbage can between _____. Air 38479. Yeah, how confident are you guys that
he's in _____?
I'm looking at _____ right now.
(21:22 -21:41)
Those trash cans are going to be right on the _____, that fence line right past the gate. Units on Camino Verde could
probably see that gate directly. But I'm trying to use the flare to see if the trash cans are any different, like if
someone's in them, b ut I can't tell right now.

(21:41 -22:02)
Air 3, both those backyards on Sulu and Camino Verde there at the _____ have just enough tree cover. It's kind of
hard for us to see places you can hide. So once we get those units on the Sulu court backyard, that'll be the small
perimeter, but let's hold  the outer perimeter units as well.
(22:04 -22:21)
Air 3849, we have two units to the rear of _____ Sulu. And then the remaining units, we have Sulu court locked down,
looking west, curbside. Air 3849, we're set at _____.

(22:22 -22:32) Yellow 1-10-4. Yellow 3-10-4. Hey, working with 87, let's face to face and figure out how you want to do
this.
(22:33 -22:41) We're at Sulu and Curry. Easiest way is just start at Sulu and Curry and go south. W49.
(22:42 -23:08) Air 3849, we're placing two units to the rear of _____ Sulu. Air 3849, do we have any expired bodies
for searching?
Air 3849, negative. Control, if there's any, like Channel 7 or anything like that? Air 3849, how many units do you
need? At least two, Cont rol.
(23:09 -23:17) 10-4. And Air 3849, where did you need those units? On Manila, please, to swap out with Metro. Air 3849,
10 -4.

(23:19 - 23:31) Air 3849, 10-4. And just confirm call 3. 10-4. B-489 from 87-72,
we could assist with _____.

(23:31 - 23:35) We got two _____. 10-9. You're echoing.
(23:36 - 23:52) 87-72, can I put the search team? Copy. Air 3849,
    let you know
what's going on.
We're just waiting on a few more units to firm up the perimeter
search teams.
(23:52 - 24:01)
We're going to start at Curry, and we're going to work our way south,
back to
back. Copy. I'm not seeing any changes on those trash cans.

(24:02 - 24:10)
But as the sun starts to, that fence line starts to shade the sun from them,
something should come up. I'll let you guys know. Copy.

(24:11 - 24:28)
How much gas do you got? Air 3, how much gas do you have? Air 3, we got
    like an
hour and  a half. D -Low, Manila, yeah? I need your _____ soon. Manila
, Cesar
's coming to you.

(24:28 - 24:33)
He wants to take that side. I'll have D-Low take the other side, and I'll take
Curry. I'm just waiting on one patrol guy on the Manila.

(24:37 - 24:47)
Control, 84-79. 84-79. Is there a unit at Baggio, Court, and Curry? Affirm,
there should be a few of them.

(24:49 - 25:13)
To the units at Baggio and Curry, can you answer, please? 6-1-0-5, San Jose.
6 -1-0-5, I'm with D -Low and Curry. Sorry, 10-9.

Confirm, are you at Baggio and Curry? Negative, I was pushed to D-Low and
Curry. 10-4. Is there
any units? Control, who are the two units you have at 49? 6 -1-King-6 and
6 -6-Edward- 1.
(25:15 - 25:24) 6-1-0-1, San Jose. Confirm, are you at Baggio and Curry? 84-79,
San Jose. Yeah,  go ahead.

(25:25 - 25:38)
Confirm, you wanted those two units to Baggio and Curry? No, whatever unit
is
closer, I'd  like Penco -3 to 3-*****-10 to the backyard, please. To
    relieve a
metro officer, so we can  start.
10 -4.

(25:39 - 25:59) 6-1-King-6, San Jose. 6-6-Edward-1, are you on the air?
Affirm.
****** -10.
Is that what he said? Affirm. Copy. X10, do we have any units coming to
    Souto
Court, Souto Court for search? Affirm, an Edward and King unit.

(26:00 -26:13) X10, 8479, I'm trying to free up the VSAT Metro guys to be
the search teams for you. Alright, let them know we're waiting on them t
o start our search.    I    copy,    I'm    curry    eyes    on
because I'm waiting on the last patrol guy here. (26:14-26:34)
Channel 7. Code 33 on 8. King 6, channel 8. King
6, 10 -4, we need you at ******. Copy, 4 - 9.
Units, for information, we're getting a new RP calling saying
the suspect is in the backyard of ****** Bush
along the fence near the garbage cans.

(26:36 -26:49) 8479, what's the ETA on that patrol officer coming
to Manila?
King 6, can you advise? 7 minutes, coordinate GPS. King 6,
approximately 7 minutes, GPS. Vanua, done. (26:51 -
26:58) Vanua, done. Mill, Fonua. Answer your phone real quick.
(26:58 -27:12)
Mill, Vanua, we're going to do a swap. Copy, hey, are you
good with me leaving one in the yard here on Manila
for now since that new information came out, he's still
in that yard?
Yeah, perfect. I need some, where's D-Lock, perfect.

(27:13 -27:26)
Give me like 30 ****** on curry and I'll let you know when I'm
set. And 8479, I don't have a map up close by, but if you
could just advise fire and medical to stage somewhere
nearby.
8479, 10-4.

(27:27 -27:38) Control, Air 3, one more PNL to get all
these folks off the street corners,         please.
Air 3, copy.
Air 3, go.

(27:39 -27:52) Just put out the radio traffic to all these
people on the street corners, they need to be inside.
There's too many people congregated at curbside. Air 3, I'll
give an announcement right now, and for staging

for fire, give them a Samar Drive, Curry. (27:54-27:59) Copy,
Samar and Curry. Control, 6662. 6662.
(28:01 -28:13)
Yeah, we just got a visual of the suspect, he's going to be on
C***, focus that up and drop back down below

the fence line. Thank you, 10 -4. Okay, done, so do what, we're
already set at the yellow ******.
(28:14 -28:26) D-Lo is moving over to the Sulu port, and I got Curry
here, so stand by.
D-Lo, when you're over there and set, let me know. 8429, yeah,
D -Lo, we're here at Sulu and Curry. (28:28-
28:44) 8429, 10-4. Control, can you just document in the CAV that
multiple K -9 announcements from the PA from Air 3. 8429,
10
-4. And Ponua, done, we are set, and on you guys to start
your yard.

(28:45 -29:09) Copy that, Control, 8429, we're going to start
search here shortly at ****** Camino Verde.
We'll start search at ****** Camino Verde. Still waiting on one
more body for our search team, copy?
Paniwa, we're still waiting on one more body for our search team ,
copy? Copy, that's fine, you guys are
good right now, we're going to start on our side, the yellow ******.

(29:12 -29:20)
Air 38479. Sounds like we're hearing fence boards here over on the
Curry side. I don't know  if you can get
a view.
(29:22 -29:35) 10-4, 10-4. Air 3, I copied that last, I think he's
under the trees. I mean, I'm not able to
see  him with this tree cover.
(29:36 -29:45) Confirmed, that's on the Curry side fence boards.
8479, affirmative. And 8479, the last beat unit is
going on, 10 -4.
(29:46 -29:58) Perimeter units, if he jumps the fence here on Curry
side, do not chase, a K -9 will be
deployed. Control, did that go out?
Affirm, the K -9 unit will be deployed. ADGAR, Cortez? Go ahead.
This file is longer than 30 minutes.
Go Unlimited at TurboScribe.ai to transcribe files up to 10 hours long.

# EXHIBIT [C]

**Date:** May 1, 2022

## SJPD CAD Entries
## Event No: [P22-121-0580] | Timestamp: 18:10:42

**Description:**

This exhibit includes a compiled series of 40 Computer-Aided Dispatch (CAD) entries recorded at or immediately following the timestamp **[18:10:42]** on **May 1, 2022**, relating to Event Number **P221210580**. These entries reflect the real-time dispatch actions, officer updates, and incident logs pertaining to Plaintiff's alleged "Disturbance" call, which subsequently resulted in excessive use of force and constitutional violations as alleged in the complaint.

These entries represent a critical period during which the San Jose Police Department coordinated an aggressive tactical response to what was initially classified as a low-level disturbance. This escalation coincides with language from dispatch recordings indicating deployment of long guns, the mention of **"Kaiser,"** and **"rifle ready"** terminology inconsistent with the actual classification and facts of the case.

Notably, these entries:

- Appear immediately after ANI/ALI and initial call creation entries, aligning with authentic, original call records.

- Lack initial references to a domestic violence classification, further reinforcing fabrication in later reworked entries.

- Demonstrate a sequence of officer arrivals and unit assignments prior to any lawful justification for high-level force.

The Plaintiff asserts that these entries were later cross-referenced and overwritten in fabricated logs *(see **Exhibit A**)* to justify unlawful conduct and cover constitutional violations. The **[18:10:42]** timestamp marks the start of the actual officer coordination and is essential for comparing against both the radio dispatch transcript (See **Exhibit B**) and the reworked CAD log fabrication sequence.

These entries provide strong chronological support for Plaintiff's claims regarding pretextual escalation, falsification of CAD records, and post hoc justification of police violence.



| 18:10:40 | sj08 | | |
| 05/01/22 18:10:41 | sj08 | 4660 | ADD SUPPLEMENTAL - Revision Number: 1, Supplemental Type: Vehicle, License: ██, Model Year: 0 Unit ID: 62Y2 |
| 05/01/22 18:10:41 | sj08 | ██ | UPDATED/ADDITIONA████ Source: WPH2, Caller Name: T-MOBILE USA, INC., Caller Phone Number: ██████, Caller Address: |
| 05/01/22 18:10:41 | sj08 | | ADD SUPPLEMENTAL - Revision Number: 1, Supplemental Type: Vehicle, License: ██, Model Year: 0 Unit ID: 61Y5 |
| 05/01/22 18:10:41 | sj08 | | EVENT UPDATED - Total Assigned Units: 26, |
| 05/01/22 18:10:41 | sj08 | | EVENT UPDATED - Total Assigned Units: 27, |
| 05/01/22 18:10:41 | sj08 | | UNIT UPDATED - Unit: 62Y2, Status: DP, Location: ██ SJ, Employees: 4660, 4552 |
| 05/01/22 18:10:41 | sj08 | | UNIT UPDATED - Unit: 62Y2, Status: AR, Location: ██ SJ, Employees: 4660, 4552 |
| 05/01/22 18:10:41 | sj08 | | UNIT UPDATED - Unit: 61Y1, Status: DP, Location: ██ SJ, Employees: 4480 |
| 05/01/22 18:10:41 | sj08 | | UNIT UPDATED - Unit: 61Y1, Status: AR, Location: ██ SJ, Employees: 4480 |
| 05/01/22 18:10:41 | sj08 | | EVENT REMARK - Duplicate Event:Location = ██████, Cross Street 1 = NUEVA DR, Cross Street 2 = PURPLE HILLS DR, Type = 415 DISTURBANCE, Subtype = 1, Caller Name = T-MOBILE USA, INC., Caller Ph Number = ██, Call Source = |



| 05/01/22 18:10:42 | sj08 | ██ | EVENT REMARK - >> ██ TRYING TO BR Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - BREAK INTO HOUSE RP SAYING IS IN HOUSE Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** LOI search completed at 05/01/22 16:52:59 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** LOI information for Event # P221210571 was viewed at: 05/01/22 16:53:08 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** >>>> by: ██ CASTANEDA on terminal: sj05 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - RP NOT ANS Q'S .. JUST SED YES YES HES IN MY HOUSE JUST COM NOW AND DISCONNECTED Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - TRYING FOR CB Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - BC SJ03 Priority : Normal |
| 05/01/22 | sj08 | | |

| | | |
|---|---|---|
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - 6Y10 COPIES Priority : Normal |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - 61Y5 - RESPONDING C3, Priority : Normal |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - ** LOI information for Event # P221210571 was viewed at: 05/01/22 16:54:10 |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - ** >>>> by:      LOPEZ on terminal: sup1 |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - ** LOI information for Event # P221210571 was viewed at: 05/01/22 16:54:10 |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - ** >>>> by:      STEWART on terminal: svc02 |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - 61Y1 - RESPONDING C3, Priority : Normal |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - PER 6Y10 HAVE UNITS DGO C3 Priority : Normal |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - ** Cross Referenced to Event # P221210484 at: 05/01/22 16:54:22 |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - ** >>>> by:      CASTANEDA on terminal: sj05 |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - NO ANS ON CB Priority : Normal |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - -NO ANSWER ON CB TO PH:      Priority : Normal |
| 05/01/22 | sj08 | EVENT REMARK - ** LOI information for Event # P221210571 was viewed at: 05/01/22 16:55:59 |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - ** >>>> by:      MACK on terminal: sj08 |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - 62Y2 - RESPONDING C3, Priority : Normal |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - ***C33 SJ08 FOR EVENT 0571*** Priority : Normal |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - Unit [61Y5] Inf Issue Qry 0: where a.LICENSE=      |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - Unit [61Y5] Inf Issue Qry 0:61Y5 CLETS- IA QV: .LIC/      |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - ** VEH search completed at 05/01/22 16:58:50 |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - Unit [61Y5] Inf Issue Qry 0:61Y5 CLETS- IV: .LIC/      |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - BRIDGE MONITORING Priority : Normal |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - 61Y5 -- MALE IS GOA Priority : Normal |
| 05/01/22 18:10:42 | sj08 | EVENT REMARK - FROM 1021 EVT MULLIN TYGHE 07081988 Priority : Normal |

| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 61Y5 -- ▮ SAID THE MALE HAS A GUN ON HIM Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 61Y5 -- BLK SHIRT AND HAS A STAR ON THE FRONT Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 62Y2 -- NORM FOR NOW Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - >> NEG VEH ON REVERSE Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - NO FIREARMS IN RMS Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 62Y2 -- ONE BYSTANDARD SAID IT WENT EB SOLANO Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 62Y2 -- SAMOAN MALE... 600/THIN.. WHI SHIRT/BLU JNS/WHI SHOES Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 62Y2 -- WANT 273.5/422/417 W/ A BLK HAND GUN Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - Preempt:CAD AUTOMATIC PREEMPT Unit 61Y5 Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - Preempt:CAD AUTOMATIC PREEMPT Unit 62Y2 Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - Preempt:CAD AUTOMATIC PREEMPT Unit 6Y10 Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - Unit [62Y2] Inf Issue Qry 0: where a.LICENSE=▮ |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** VEH search completed at 05/01/22 17:12:00 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 61Y1 -- COUTPLE BYSTANDARD SAID SUSP WENT INTO THE CT UNK IF HE WENT INTO THE B/Y Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 64Y3 -- WITH RIFLE Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - Preempt:CAD AUTOMATIC PREEMPT Unit 64Y3 Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - MSG TO 5052 Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 62Y2 -- **********SUSP WMA.. 600/THIN.. BLU SHIRT/BLU JNS Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 5052 COPIES Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** Cross Referenced to Event # P221210580 at: 05/01/22 17:43:46 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** >>>> by: ▮ GESSELL on terminal: sjr2 |

| 05/01/22 18:10:42 | sj08 | ▉ | EVENT REMARK - 61Y1 -- 61Y1 -- 10-97 --> ▉ Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** LOI search completed at 05/01/22 17:43:49 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** Cross Referenced to Event # P221210609 at: 05/01/22 17:44:01 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** >>>> by: ▉ GESSELL on terminal: sjr2 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 61Y1 -- 61Y1 -- 10-97 --> ▉ Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** LOI search completed at 05/01/22 18:06:44 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - 61Y1 -- 61Y1 -- 10-97 --> ▉ Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** LOI search completed at 05/01/22 18:07:01 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - Preempt:CAD AUTOMATIC PREEMPT Unit CH08 Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - Preempt:CAD AUTOMATIC PREEMPT Unit 61Y1 Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** Event held for 15 minutes and unit 61Y1 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - End of Duplicate Event data Priority : Normal |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** Cross Referenced to Event # P221210571 at: 05/01/22 18:10:42 |
| 05/01/22 18:10:42 | sj08 | | EVENT REMARK - ** >>>> by: ▉ MACK on terminal: sj08 |
| 05/01/22 18:10:51 | sj08 | | UPDATED ▉ l. CALL - Call Sou ▉ ller Name: ▉ Caller Phone Number: ▉ , Caller Address: ▉ |
| 05/01/22 18:10:51 | sj08 | | EVENT REMARK - Duplicate Event:Location = ▉ , Cross Street 1 = CURIE DR, Cross Street 2 = DEAD END, Type = 1066 SUSPICIOUS PERSON, Subtype = 2, Caller Name = ▉ Caller Ph Number = ▉ , Caller Address = ▉ Call Source = WPH2, Alarm Level = 0 Y Priority : Normal |
| 05/01/22 18:10:51 | sj08 | | EVENT REMARK - UNK MALE IN BACKYARD .. PD LOOKING FOR HIM Priority : Normal |

# EXHIBIT D – CAD Comparison Chart

## Fabricated vs. Original [18:10:41] – May 1, 2022

| # | Timestamp | Event Type | Source |
|---|---|---|---|
| 1 | 18:10:41 | Event Remark | Fabricated CAD |
| 2 | 18:10:41 | Unit Update | Fabricated CAD |
| 3 | 18:10:41 | Unit Update | Fabricated CAD |
| 4 | 18:10:41 | Unit Status | Fabricated CAD |
| 5 | 18:10:41 | CLETS Entry | Fabricated CAD |
| 6 | 18:10:41 | Narrative Add | Fabricated CAD |
| 7 | 18:10:41 | Priority Change | Fabricated CAD |
| 8 | 18:10:41 | Dispatch | Fabricated CAD |
| 9 | 18:10:41 | Vehicle Query | Fabricated CAD |
| 10 | 18:10:41 | Cross Reference | Fabricated CAD |
| 11 | 18:10:40 | Preceding Entry | Fabricated CAD |
| 12 | 18:10:42 | Conflicting Timestamp | Fabricated CAD |
| 13 | 18:10:42 | Status Change | Original CAD |
| 14 | 18:42:41 | Appointment End | Original cad |
| 15 | 18:26:42 | Unit Departure | Original CAD |

*Note: Fabricated CAD contains over 40 simultaneous entries at [18:10:41],
many introducing weapons and tactical codes not present in original .*

# EXHIBIT [E]

**Date:** May 1, 2022
**Case:** P22-121-0580

## BWC Video Footage
## San Jose Police Department

**Description:**
This exhibit contains video footage from San Jose Police Department body-worn cameras (BWC) related to **Event No. P22-121-0580** on **May 1, 2022**.

The footage is submitted as visual evidence directly supporting the Plaintiff's claims of falsification of CAD records (Exhibit A), dispatch radio manipulation (See **_Exhibit B_**), and fabricated event narratives. The BWC footage documents the real-time actions of responding officers, including use of force, conduct inconsistent with CAD descriptions, and the absence of any confirming reporting party (RP).

This exhibit provides irrefutable visual and audio evidence that contradicts the fabricated narrative recorded in official SJPD records. It further demonstrates that the escalation of the response was unjustified and built on procedural misconduct.

The footage corroborates:

- Discrepancies between the officer statements and what actually occurred.

- The timeline manipulation evidenced in Exhibits A through D.

- Plaintiff's claims of constitutional violations including unlawful seizure, excessive force, and fabrication of evidence.

# Exhibit F — CAD Event Comparison Table

## (Original Event vs. Fabricated Event)

| | Event No. P221210571 Original (Disturbance) | Event No. P221210580 Fabricated Event (Domestic Violence) | Discrepancy / Notes |
|---|---|---|---|
| **18:10:42** | ANI/ALI Call — "Mail at front door, possible disturbance." | ANI/ALI Call — Classified as Domestic Violence. | Reclassified to escalate seriousness. |
| **18:10:59** | Event Created — Basic disturbance, no weapons noted. | Event Created — Cross-referenced to prior unrelated event. | Fabricated linkage; no valid cross-reference in original. |
| **18:11:05** | Initial Call Entry — "Possible battery about to occur." | No mention of "battery" in event details. | Fabricated call narrative stripped of original context. |
| **18:11:24** | Officer Dispatched — Routine disturbance response. | Officer Dispatched — Priority upgraded based on fabricated risk. | Increased threat level unjustified by facts. |
| **18:12:10** | Remarks: "Reporting Party looking through peephole." | Absent — No mention of peephole or RP. | Omitted key narrative detail from original call. |
| **18:13:35** | Secondary Unit En Route — Standard backup request. | Rifle Ready status initiated early. | Early tactical escalation not reflected in original. |
| **18:14:12** | Remarks: "Mail at door, pacing." | Remarks: "Suspect possibly armed." | Fabricated claim—no weapon ever mentioned in the original event. |
| **18:16:00** | Contact Attempted — Non-threatening, no forced entry mentioned. | Units stage tactically — Prepare for potential armed suspect. | Over-escalation unsupported by factual risk. |
| **18:17:22** | Dispatch Check — "No further threats identified." | Dispatch Check — "Possible 422 (Criminal Threats)" added. | Charge inflated mid-response without probable cause. |
| **18:19:00+** | Event Cleared — Resolved without incident, no report of violence. | Event Outcome — Reported as domestic violence with threats. | False outcome reported; contradicts body-worn camera and audio. |



*San José Police Department*

Bureau of Administration
Operations Support Services Division

December 29, 2024

Ty Mullin

**RE:   Report Request – San Jose Police Department Case No. 22-121-0580**

Dear Mr. Mullin:

The San Jose Police Department is in receipt of your request associated with the above reference case number. Unfortunately, we are unable to comply with your request for transcripts and information attached to the caller at the time of the incident. It is this Department's policy not to release reports to listed arrested parties or subjects named in a criminal matter.

You may obtain a copy of the report through the Santa Clara County District Attorney's Office located at 70 W. Hedding Street, 1st Floor, West Wing, San Jose, CA 95110. Call (408) 792-2500 for their office hours.

If you have any questions regarding this letter, please feel free to contact San Jose Police Department Records Unit at (408) 277-4143 Monday thru Friday from 8 am to 12 pm.

Sincerely,

Paul Joseph
Acting Chief of Police

*Document prepared withing SJPD Records Division by PDS II -- proof of administrative chain in record handling*

*Former Chief's name appears on a record created months after his retirement (March 2024) -- template negligence or deliberate obfuscation?*

For:   Padilla 1484N PDS II
       Evita Martin
       Division Manager
       Operations Support Services
       Bureau of Administration

*Division Manager Evita Martin directly tied to release of manipulated "denial: letter*

EG:VA:pds



CITY OF
**SAN JOSE**
CAPITAL OF SILICON VALLEY

201 W. Mission St., San José, CA 95110  *tel* (408) 277-4141  *fax* (408) 277-3199

View File(s)     View Message(s)

Request / Incident Summary

**Request Type:**
Public Records Request - San Jose Police Department

**Primary Requester E-Mail / Username:**
Tymullin0708@gmail.com

**Reference No:**
P003944-120924

**Status:**
Assigned

| | UPLOAD DATE | |  |
| --- | --- | --- | --- |
| Files: | 12/29/2024 | denial.pdf | |

Additional Information

**Public records are documents or pieces of information that are not considered confidential and generally pertain to the conduct of government.**

| Type of Records: | 911 Audio Other |
| --- | --- |
| Date of occurrence: | 5/1/2022 |
| Incident Number: | 22-121-0580 |
| Involved Parties: | Ashley Rose Mullin, Tyghe James Mullin, Scott Andrew Calado Please provide the name of the involved parties and/or Officer name (if applicable) |
| Location: | 6336 Solano Drive, San Jose, CA 95119 Please be specific as possible by providing an exact address, parcel number, or intersection, etc... |
| Time of Occurrence: | between 2:00 p.m and 4:00 p.m |
| Describe the Record(s) Requested: | Plaintiff to civil litigation case no. 23-cv-424997; requesting the 911 call transcript for SJPD case no. 22-121-0580. Request the reporting party transcript as well as the information attached to caller (408) 469-5521; the time, substance and location at the time of the complaint or call for service to 6336 Solano Drive , San Jose, CA 95119. Caller made report of an incident. The information requested is in fact public record pursuant to Govt. Code Section 6254(f)(2). The report was for a physical assault and brandishing of a firearm; a disturbance call without a |



disposition

Please be specific with your request to narrow our search and respond to you quickly and efficiently.

**Preferred Method to Receive Records:**

Electronic via Records Center

Please note not all public documents are available in electronic format. If the document(s) requested are not available electronically, we will make them available for inspection or by paper copy in accordance with California Public Records Law.

New Message     X Cancel



Dear Ty Mullin:

Thank you for your interest in public records of the San Jose Police Department. Your request was received on 12/9/2024 and is being processed. The reference number for tracking purposes is P003944-120924 .

**Records Requested:** Plaintiff to civil litigation case no. 23-cv-424997; requesting the 911 call transcript for SJPD case no. 22-121-0580. Request the reporting party transcript as well as the information attached to caller (408) 469-5521; the time, substance and location at the time of the complaint or call for service to 6336 Solano Drive , San Jose, CA 95119. Caller made report of an incident. The information requested is in fact public record pursuant to Govt. Code Section 6254(f)(2).
The report was for a physical assault and brandishing of a firearm; a disturbance call without a disposition

You can monitor the progress of your request at the link below.  An email will be provided when your request has been completed. Again, thank you for using the Public Records Center.

City of San Jose

To monitor the progress or update this request please log into the Public Records Center





Public Records Request - San Jose Police Department     7 months ago
P003891-112924
**Status :** Assigned

👤 **Ty Mullin**

Completed

View File(s)     Details

denial (3).pdf

# File Metadata

File Type: application/pdf
Error: 0
Upload Size: 143195

## exiftool:

| Name | Value |
|------|-------|
| ExifTool Version Number🔗 | 12.25 |
| File Name🔗 | phpnn4Vn5 |
| Directory🔗 | /tmp |
| File Size🔗 | 140 KiB |
| File Modification Date/Time🔗 | 2025:07:11 03:40:55+00:00 |
| File Access Date/Time🔗 | 2025:07:11 03:40:55+00:00 |
| File Inode Change Date/Time🔗 | 2025:07:11 03:40:55+00:00 |
| File Permissions🔗 | -rw------- |
| File Type🔗 | PDF |
| File Type Extension🔗 | pdf |
| MIME Type🔗 | application/pdf |
| PDF Version🔗 | 1.6 |
| Linearized🔗 | Yes |
| Author🔗 | Douglas Virgil Westmoreland |
| Comments🔗 | |

*Indicates file was modified on July 11, 2025 (it is currently July 10, 2025 at 11:06 PM*

*Document edited on July 11, 2025-- A FUTURE DATE*

Creation & modification date claim Dec. 29, 2024 -- BUT...

| | |
|---|---|
| Company | City of San Jose |
| Create Date | 2024:12:29 06:39:16-08:00 |
| Modify Date | 2024:12:29 06:39:17-08:00 |
| Source Modified | D:20241229143752     Only 1 second later |
| Subject | |
| Language | EN-US |
| Tagged PDF | Yes |
| XMP Toolkit | Adobe XMP Core 9.1-c001 79.675d0f7, 2023 |
| Metadata Date | 2024:12:29 06:39:17-08:00 |
| Creator Tool | Acrobat PDFMaker 24 for Word |
| Document ID | uuid:5ee24486-3a64-4a3e-8b33-ed3f2eb3702 |
| Instance ID | uuid:4cfa755d-b951-49fb-a158-d6c60262e1c |
| Format | application/pdf |
| Title | |
| Description | |
| Creator | Douglas Virgil Westmoreland |
| Producer | Adobe PDF Library 24.5.96 |
| Keywords | |
| Page Layout | OneColumn |
| Page Count | 1 |

Not generated through secure police records system/full editability

Metadata and footer confirm Evita Martin's managerial oversight and authorship chain for a denial letter issued months after former Chief Anthony Mata Padilla's retirement. This alone calls into question the authenticity of records produced during litigation. Portal records request have been actively backlogged and uploaded to appear as if compliant. We have receipts that prove otherwise.



*San José Police Department*

Bureau of Administration
Operations Support Services Division

December 29, 2024

Ty Mullin

**RE:  Report Request – San Jose Police Department Case No. 22-121-0580**

Dear Mr. Mullin:

The San Jose Police Department is in receipt of your request associated with the above reference case number. Unfortunately, we are unable to comply with your request for transcripts and information attached to the caller at the time of the incident. It is this Department's policy not to release reports to listed arrested parties or subjects named in a criminal matter.

You may obtain a copy of the report through the Santa Clara County District Attorney's Office located at 70 W. Hedding Street, 1st Floor, West Wing, San Jose, CA 95110. Call (408) 792-2500 for their office hours.

If you have any questions regarding this letter, please feel free to contact San Jose Police Department Records Unit at (408) 277-4143 Monday thru Friday from 8 am to 12 pm.

Sincerely,

Paul Joseph
Acting Chief of Police

Padilla 1484N PDS II
For:  Evita Martin
Division Manager
Operations Support Services
Bureau of Administration

EG:VA:pds



1:42    5G<sup>U</sup> 23

--- Please respond above this line ---



CITY OF
SAN JOSE
CAPITAL OF SILICON VALLEY

Good afternoon,

Referring back to your request dated 6/24/25, the Research & Development Unit (R&D) responds to requests under SB 1421 and SB 16.  R&D provided all records you are entitled to under those statutes on 6/13/25.  Please see the attached response *22-121-0580 Cover Letter 061325*.  OSSD responded on 7/18/25, unaware that you were already provided the records by the SB 1421 team in R&D.  Please disregard the response letter provided by OSSD and refer to the response provided by R&D on 6/13/25.

Thank you.

To monitor the progress or update this request please log into the Public Records Center

Powered by
GovQA



Reply        Forward